STATE of Missouri ex rel. CHURCH'S FRIED CHICKEN, INC., Relator-Appellant,

v.

The BOARD OF ADJUSTMENT OF the CITY OF ST. LOUIS, Charles K. Baker, Gregory Gunn, Joseph F. Failoni, Charles A. Sala, in their capacity as members of the Board of Adjustment of the City of St. Louis, Respondents-Respondents.

No. 40222.

Missouri Court of Appeals, Eastern District, Division One.

April 3, 1979.

Kenneth C. Brostron, James J. Hennelly, Lashly, Caruthers, Thies, Rava & Hamel, St. Louis, for relator-appellant.

Jack L. Koehr, City Counselor, Edward M. Peek, Associate City Counselor, St. Louis, for respondents-respondents.

SNYDER, Presiding Judge.

Appeal from a judgment of the Circuit Court of the City of St. Louis, in a certiorari proceeding, affirming a decision by the Board of Adjustment to revoke a building permit issued to Church's Fried Chicken, Inc., for the construction of a restaurant at 1825 Gravois.

The issue on appeal is whether the Board of Adjustment's decision that Church's Fried Chicken, Inc. was constructing a "carry-out restaurant," as that term is defined in St. Louis Zoning Code, Section 901.095, is supported by competent and substantial evidence upon the whole record or is clearly contrary to the overwhelming weight of the evidence.

Reversed and remanded with instructions to reinstate the building permit.

On December 30, 1976 the Department of Public Safety, Division of Building and Inspection of the City of St. Louis, issued a building permit to Church's Fried Chicken, Inc. (Church's) to erect a one-story "sit-down restaurant" at 1825 Gravois in the City of St. Louis. The Board of Adjustment of the City of St. Louis (Board) informed Church's, by a letter dated March 9, 1977 and received by Church's March 10, 1977, that St. Michael's Russian Orthodox Church (St. Michael's) had requested a "clarification in the issuance" of Church's building permit. St. Michael's is located directly to the west and immediately adjacent to the Church's lot. The request for "clarification" was apparently treated by the Board as an appeal by St. Michael's of the issuance of the building permit. A hearing was set for and held on March 23, 1977.

On March 30, 1977 Church's received notice that its building permit had been revoked. The revocation was based upon the Board's finding that the proposed facility was a "carry-out restaurant" rather than a "sit-down restaurant." Construction was halted. At that time the restaurant was 65 percent complete and $112,000 had been spent on the purchase of the lot and construction of the building.

Church's sought and was granted a rehearing on the building permit revocation. At the rehearing on May 18, 1977 four witnesses appeared on behalf of St. Michael's: John Laskowski, president of St. Michael's Church council; George Fedak, a parishioner of St. Michael's; Father David Homiak, parish priest of St. Michael's; and St. Louis Alderman Raymond Leisure, who represents the ward containing St. Michael's parish. Church's produced two witnesses: Reginald Lynch, Church's Division Manager for the nine-state region including Missouri; and Gerald Oliver, construction engineer for Church's. Their testimony will be discussed below.

On May 20, 1977 the Board issued its Findings of Fact, Conclusions of Law and

Order and again revoked the building permit on the ground that the proposed restaurant was a "carry-out restaurant," as that term is defined in St. Louis Zoning Code § 901.095.[1] Such a use at the proposed location is not permissible under § 910.020 of the Zoning Code.[2] A "sit-down restaurant," however, is a permitted use.

Pursuant to § 89.110, RSMo 1969 and Rule 100.01 et seq., Church's filed a petition for writ of certiorari on June 17, 1977. The case was submitted to the circuit court upon the transcript and exhibits before the Board and no further evidence was received. The circuit court affirmed the findings and order of the Board, and this appeal followed.

The scope of judicial review to be given a decision of the Board of Adjustment in zoning matters is limited:

> Neither the Circuit Court nor this court can try this case de novo or substitute its judgment for that of the Board. Review is limited to a determination of whether the ruling of the Board is authorized by law and is supported by competent and substantial evidence upon the whole record. If the ruling of the Board is supported by substantial evidence and the result reached is reasonable the courts are without authority to disturb the finding unless it is clearly contrary to the overwhelming weight of the evidence. [Citing cases and authorities].

*State ex rel. Ellis v. Liddle*, 520 S.W.2d 644, 646 (Mo.App.1975).[3]

"Substantial evidence" has been defined as "evidence which, if true, would have a probative force upon the issues. [Citing cases]." *State ex rel. Rice v. Public Service*

*Commission*, 359 Mo. 109, 220 S.W.2d 61, 64 (Mo. banc 1949). Accord, *State ex rel. Utility Consumers Council v. Pub. Serv. Com.*, 562 S.W.2d 688, 692 (Mo.App.1978), cert. denied, —— U.S. ——, 99 S.Ct. 192, 58 L.Ed.2d 177 (1978). In *Central Bank of Clayton v. State Banking Bd. of Mo.*, 509 S.W.2d 175, 188 (Mo.App.1974), this court, in discussing that quantum of evidence described it as:

> "evidence from which the trier or triers of fact reasonably could find the issues in harmony therewith; it is evidence of a character sufficiently substantial to warrant the trier of facts in finding from it the facts, to establish which the evidence was introduced." *Collins v. Division of Welfare*, 364 Mo. 1032, 270 S.W.2d 817, 820 (1954).

Section 901.095 of the Zoning Code sets out two factors for the Board's consideration in determining whether a proposed restaurant will be a "carry-out restaurant" and subject to the proximity strictures of § 910.020. The first of these is whether the food will be "primarily sold in a packaged, ready to consume state." The second consideration is whether the food is "intended for consumption by the customer off the premises." For the Board's decision to stand, there must be substantial and competent evidence on both elements.

Examination of the entire record in light of these considerations compels the conclusion that the Board's decision is not supported by competent and substantial evidence.

---

1. Section 901.095 of the Zoning Code defines a "carry-out restaurant" as "an establishment where food, frozen dessert, or beverages are primarily sold in a packaged, ready to consume state intended for consumption by the customer off the premises."

2. Section 910.020 of the Zoning Code sets out the appropriate use regulations and states that, for this type of district, on a street with an average weekday traffic volume in excess of 7,500 vehicles per day, no carry-out restaurant shall "be erected nearer than 300 feet of such use on the same side of the street . . . ." The City Counselor's Office and Church's sub-

mitted an agreed statement of facts to the Board which stipulated the traffic volume in this block of Gravois exceeded 7,500 vehicles per average weekday and that there was a Jack-in-the-Box carry-out restaurant on the same side of the street within 300 feet of Church's structure.

3. Accord: *Rosedale-Skinker Imp. Assn. v. Board of Adjustment*, 425 S.W.2d 929 (Mo. banc 1968); *Lichte v. Heidlage*, 536 S.W.2d 898 (Mo.App.1976); *Brown v. Board of Adjustment*, 469 S.W.2d 844 (Mo.App.1971); 82 Am. Jur.2d Zoning, §§ 334–335.

The *only* evidence on the first element—how the food will be served—was provided by Reginald Lynch, Church's Division Manager. He stated, on direct examination, that "[t]he food that will be served on these premises will be served on open trays for on the property unless the customer wants food to go and then we'll put it in boxes." This statement was not contradicted or challenged by any evidence from St. Michael's. The Board, in its findings of fact, did not include a finding that the testimony of Mr. Lynch was not credible. In *Mo. Church of Scientology v. State Tax Comm.*, 560 S.W.2d 837, 843 (Mo. banc 1977), the court stated the rule that an administrative tribunal "may not arbitrarily disregard or ignore undisputed testimony of a witness not shown to have been impeached or disbelieved" by the administrative tribunal.[4] Thus, the only evidence on the first element showed the food was to be primarily served on open trays and not in a packaged state. There was no evidence, substantial or otherwise, to the contrary.

In finding the second element—that the food was intended for consumption off the premises—the Board relied "upon the nature of the Applicant's business and the size and character of the proposed building, including available seating capacity." The Board made three findings of fact which it apparently considered supportive of its conclusion on this element. In "Finding of Fact No. 12," the Board stated, "According to its 1975 Annual Report, 'Church's Fried Chicken, Inc.' sells fried chicken and complementary food items through a chain of drive-in take-out neighborhood stores." In "Finding of Fact No. 13," the Board found that Church's had "provided twenty-four (24) seats for sit-down service in an area of approximately 240 or 250 sq. ft." In "Finding of Fact No. 15," the Board stated, "Testimony on behalf of the Applicant indicated that the seating capacity of the subject store is approximately 3.6 times as many seats as it normally provides in its carry-out

stores and further that it has one (1) store in St. Charles, Missouri with a seating capacity of fifty-two (52) seats."

Unfortunately, Finding No. 12 relies on documentary evidence not properly admitted. Finding No. 13 is factually accurate but not supportive of the Board's conclusion. Finding No. 15 misstates the facts as they were presented to the Board.

Leaving aside the issue of whether the 1975 Annual Report was competent evidence on the nature of Church's business (i. e., not hearsay), the record reveals this document was never admitted into evidence at the hearing on May 18, 1977. It was never introduced, marked or received in evidence and made part of the record of this case. While it is included in the exhibits on appeal as "Exhibit 'J'," that letter was assigned at the hearing to the "Agreed Statement of Facts" submitted by the parties, which was admitted *after* the only reference to the Annual Report. Church's had no opportunity to challenge its introduction and consideration in the absence of a formal offer of the report as evidence. Further, Church's made repeated objections to admission of or reference to other similar documents.[5] These objections were sustained and the objects withheld, the chairman stating that this documentary evidence would be excluded. The chairman also stated these reports were not in issue, the sole issue being the type of operation to be carried on at 1825 Gravois.

Although the rules of evidence have been greatly relaxed in administrative hearings, "it does not follow that the fundamental rules of evidence can be abrogated and nullified. [Citing cases]." *State ex rel. Bond v. Simmons*, 299 S.W.2d 540, 545 (Mo.App. 1957). Further, "a determination as to whether the decisions of any administrative agency is supported by competent and substantial evidence upon the whole record can only be made by reference to such evidence

4. Accord: *State ex rel. Kahler v. State Tax Commission*, 393 S.W.2d 460, 465 (Mo.1965); *Koplar v. State Tax Commission*, 321 S.W.2d 686 (Mo.1959).

5. Standard and Poor's Register (1977); Moody's OTC Industrial Manual (1976); Food Service Chain Executive Magazine, January, 1977 issue.

as is incorporated in the record presented for review. [Citing authorities]." *Koplar v. State Tax Commission*, 321 S.W.2d 686, 695 (Mo.1959). Because the only item of documentary evidence relied upon by the Board to support its conclusion that the nature of Church's business was "carry-out restaurants" was not in the record, that finding is not supported by substantial and competent evidence.

The only other evidence on the "carry-out" nature of Church's business were the conclusional statements of the witnesses for St. Michael's. Mr. Laskowski stated, "To have a sit-down restaurant, believe me, I think I would have a bigger dining area . . . ." Mr. Fedak stated, "My impression and opinion of a restaurant that would be serviced would be a waitress that would come and serve you sit-down style." Alderman Leisure simply said, "[A]s far as I'm concerned, it's a carry-out restaurant." These witnesses' conclusions on the very issue before the Board, or their opinions as to how a sit-down restaurant should be run, devoid of any factual support, do not rise to the level of substantial and competent evidence on the factor set out in § 901.095— "intended for consumption by the customer off the premises."

In concluding that "the size and character of the proposed building, including available seating capacity" indicated Church's intended to operate a "carry-out" restaurant, the Board must have relied in large part on "Findings of Fact" Nos. 13 and 15.

The fact that twenty-four seats were to be provided for sit-down service (Finding No. 13) is not substantial evidence that the proposed business was to be a carry-out restaurant in the absence of some further evidence that restaurants with only twenty-four seats were invariably, or even usually, carry-out restaurants. The only evidence before the Board relating to the number of seats and size of the restaurant in this connection were the conclusional statements of witnesses Laskowski, Fedak and Leisure.

The first portion of Finding No. 15 "that the seating capacity of the subject store is approximately 3.6 times as many seats as it normally provides in its carry-out stores" misstates the evidence. The actual testimony of Mr. Lynch, on behalf of Church's was that "we have assigned over three times, three point six [3.6] times as much area as sit-down restaurant on Gravois as we have for carry-out." His actual statement obviously has a different meaning and implication in light of the language of the ordinance—"intended for consumption by the customer off the premises."

The second portion of the finding—regarding the number of seats at a St. Charles Church's restaurant—was based on irrelevant evidence. At the hearing on May 18, 1977 the chairman repeatedly stated the only issue before the Board was the character of the store at 1825 Gravois and that "anything pertaining to other sites and so forth is not at issue." When Father Homiak objected to Mr. Oliver's comment on other stores, the chairman replied, "I will disregard that [Oliver's testimony]. Our only discussion at this time is about the Church's on Gravois." The chairman's statements at the hearing show he realized comparisons to and comments about Church's other stores were irrelevant to the issue of Church's intended operations on Gravois. Yet, the Board's findings rely on this irrelevant evidence.

Appellate courts are, with good reason, hesitant to interfere with and overturn the decisions of administrative tribunals. The standard devised for appellate review insures that the majority of their actions and decisions will be upheld. However, when an administrative tribunal makes a decision based on incompetent, unadmitted, irrelevant and misstated evidence and relies on bald conclusional statements to support its decision, the judgment of the tribunal must be reversed. And where the overwhelming weight of the evidence supports the conclusion that an applicant for a building permit does not intend to operate a restaurant which will be primarily "carry-out," as that term is defined in § 901.095 of the Zoning Code, the permit may not be revoked on the ground that it does so intend. Here, Church's intends to primarily serve food on

open trays for consumption on the premises. Booths and settees seating twenty-four patrons—the maximum number of seats feasible in the dimensions of the building—will be provided immediately adjacent to the counter where the food is ordered and served. The ratio of seating area to carry-out area is 3.6 to 1. A drive-through window included in the original plans and construction package has been abandoned. Whether the decision of the Board is condemned as not supported by competent and substantial evidence, or as against the overwhelming weight of the evidence, it cannot stand.

It is unnecessary to rule on Church's other contentions that: (1) St. Michael's was guilty of laches and its appeal untimely; (2) the Board was estopped from revoking the permit and was guilty of laches; and (3) St. Michael's was not an aggrieved person within the meaning of § 89.100, RSMo 1969.

Reversed and remanded, with instructions to reinstate the building permit.

WEIER, C. J., and SMITH, J., concur.