**WINDY POINT PARTNERS, L.L.C. and B–SIB L.L.C., Appellants,**

v.

**BOONE COUNTY, Missouri by and through the BOONE COUNTY COMMISSION and Don Stamper, Commissioner, Skip Elkin, Commissioner, Karen Miller, Commissioner, as constituting the Boone County Commission of Boone County, Missouri; and Linda Vogt, Former Commissioner of Commission of Boone County, Missouri, Respondents.**

Nos. WD 60669, WD 60836.

Missouri Court of Appeals,
Western District.

Jan. 28, 2003.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 1, 2003.

Craig Alan Van Matre, Columbia, for appellant.

John Lindsey Patton, Columbia, for respondent.

RONALD R. HOLLIGER, Judge.

Windy Point appeals the Circuit Court of Boone County's judgment upholding the Boone County Commission's denial of Windy Point's application for rezoning and conditional use permit for a mobile home park. Because we find no error in the Commission's determinations, we affirm the Commission's decision.

## Facts

Windy Point submitted to the Boone County Department of Planning and Building Inspection an application to rezone its 93.8–acre tract of land as a Planned Residential District (PRD). The Boone County Zoning Ordinance provides for various types of Planned Developments. One of these is the PRD, which is allowed in R–S, single-family residential, and R–M, moderate density residential, districts. For PRDs, the Yard, Height and Density requirements of the district are waived and replaced with a formula for determining the number of dwelling units permitted. The Boone County Zoning Ordinance permits PRDs to "encourage unified developments, to minimize adverse impacts on adjacent lands and to allow greater flexibility in the design of buildings and building complexes than would otherwise be possible through the strict application of district regulations."

Windy Point's application consisted of a preliminary plat and review plan accompanied by an application for a conditional use permit for a mobile home park. The 93.8–acre tract includes a fourteen-acre lake. Windy Point planned to build single family housing west of the lake. The portion of

the development east of the lake was to consist of manufactured (mobile) homes. Windy Point proposed the entire development as a PRD; only the mobile home park on the east side of the lake required the conditional use permit. Except for a small part of the east side of the tract zoned R–M, the tract is zoned R–S.

A public hearing was held before the Boone County Planning and Zoning Commission. The evidence at the hearing in support of the conditional use permit included a traffic study by Shafer, Kline & Warren, which was addressed by Ron Petering, an engineer and surveyor, and appraisal studies by Allen Moore and Jack Blaylock, both indicating that area property values would not be affected by a mobile home park.

Seventeen area residents presented testimony in opposition to the conditional use permit. Several testified that real estate values and traffic would be negatively affected by the development.

The Planning and Zoning Commission denied Windy Point's application. Windy Point appealed to the Boone County Commission. The Boone County Commission also denied the application for the conditional use permit and denied approval of the preliminary plat and review plan. In its Findings of Fact, the County Commission stated that, although the development would meet the requirements of permitted uses for R–S and R–M districts, the conditional use permit could not be granted because the development did not comply with Section 15.A (2) of the Boone County Zoning Ordinance. Section 15.A (2) reads:

(2) Before authorizing the issuance of such a conditional use permit, the County Commission shall satisfy itself that:

(a) The establishment, maintenance or operation of a conditional use permit will not be detrimental to or endanger the public health, safety, comfort or general welfare.

(b) The conditional use permit will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted by these regulations.

(c) The conditional use permit will not substantially diminish or impair property values of existing properties in the neighborhood.

(d) All necessary facilities will be available, including, but not limited to, utilities, roads, road access and drainage.

(e) The establishment of a conditional use permit will not impede the normal and orderly development and improvement of surrounding property for uses permitted in the zoning district.

(f) The establishment of a conditional use permit will not hinder the flow of traffic or result in traffic congestion on the public streets. This will include the provision of points of access to the subject property.

(g) The conditional use permit shall in all other respects conform to the applicable regulations of the zoning district in which it is located. The County Commission shall find that there is a public necessity for the conditional use permit.

The Commission found that Windy Point had not satisfied subsection (a) for four reasons. First, the Commission found that the average density for the conditional use permit area did not satisfy the density requirement for an R–S district, and that the amount of open space and recreational space was insufficient to offset the higher density. Second, the Commission found that preliminary plat and review plan

failed to show the "various amenities" mentioned in oral testimony. Third, the Commission found that the amount of park and recreation area was insufficient to support the population density. Fourth, the Commission found that the landscape buffer between the development and the highway was insufficient to screen noise and protect children from traffic. Regarding subsection (b), the Commission found that the conditional use would increase traffic and congestion on the roads in and around the development, thereby injuring the use and enjoyment of other property in the vicinity. The Commission also found that Windy Point had not satisfied subsections (c) or (e), but it did not base its conclusion on those findings. The Commission was satisfied that Windy Point met the requirements for subsection (d). The Commission found that Windy Point had not satisfied subsection (f) because the conditional use would hinder the flow of traffic and result in traffic congestion. Finally, regarding subsection (g), the Commission found that the conditional use was not a "public necessity" because vacancies existed in surrounding mobile home parks and because the development did not meet the minimum size per lot requirements for an R–S district.

In its Conclusions of Law, the Commission stated that "as a matter of law under the regulations that because the application for conditional use permit cannot be granted, the preliminary plat and review plan should be rejected based upon the Commission's findings of fact above."

Windy Point filed a petition for judicial review in the Circuit Court of Boone County. The circuit court entered judgment in favor of the County Commission.

### Standards of Review

▮ Windy Point appeals both the denial of the application for a conditional use permit and the denial of the rezoning. In our review of the Commission's denial of the application for the conditional use permit, we review the agency ruling, rather than that of the circuit court. *Platte Woods United Methodist Church v. City of Platte Woods,* 935 S.W.2d 735, 738 (Mo. App.1996). We review whether the agency's action is supported by competent and substantial evidence upon the record, is arbitrary, capricious or unreasonable, or involves an abuse of discretion. Section 536.140.2 RSMo, *Platte Woods United Methodist Church,* 935 S.W.2d at 738. Our review may also extend to a determination of whether the decision was contrary to the overwhelming weight of the evidence. *State ex rel. C.C.G. Mgmt. Corp. v. City of Overland,* 624 S.W.2d 50, 54 (Mo.App.1981).

▮ One of Windy Point's stated points on appeal attacks the Commission's denial of the requested rezoning of the tract. Our review of that denial falls under a different standard of review. The exercise of zoning power is a legislative rather than a quasi-judicial function. *Heidrich v. City of Lee's Summit,* 916 S.W.2d 242, 248 (Mo.App.1995). We may reverse a legislative action only if it is arbitrary and unreasonable, meaning that the decision is not "fairly debatable." *Id.* A decision is considered arbitrary and unreasonable if it bears no substantial relationship to the public health, safety, morals, or general welfare. *Id.*

### Discussion

Windy Point raises five points on appeal. We will address those points out of order, where necessary for efficient disposition of the present matter.

▮ We begin our review of the Commission's decision with Windy Point's second point on appeal, which contends that

there was no competent and substantial evidence adduced at the hearing in opposition to its application. Boone County points out that a number of residents who neighbored the proposed development testified that property values would be diminished and traffic would be affected. The County takes the position that the testimony of the neighbors regarding the effect of the development constituted competent evidence.

As stated previously, the Commission's decision must have been upon competent and substantial evidence to survive review. *Ford Leasing Dev. Co. v. City of Ellisville,* 718 S.W.2d 228, 231–32 (Mo.App.1986). Windy Point concedes that the neighbors' testimony as to the property values and traffic is competent evidence. The question, then, is whether their testimony constituted substantial evidence that the Commission could rely upon in finding that the development failed to meet any of the criteria in § 15.A (2) of the Boone County Zoning Ordinances. Substantial evidence is defined as "competent evidence which, if believed, would have probative force upon the issues." *Ford Leasing,* 718 S.W.2d at 233.

Several neighboring residents testified regarding the current traffic problems on roads that would serve the development and how the additional traffic load created by the development would compound those problems. One neighbor testified that Highway VV is "a dangerous road now. Adding hundreds of more trips per day can only increase that." Another neighbor testified, regarding the intersection of Mauller and VV: "You put 200 more people going to work at the same time there's going to be a lot more accidents."

■ Evidence is substantial if it supports the matter at issue. In this context, the decision in *Ford Leasing* is illustrative. There lay testimony was received that traffic flow would increase by one to two percent. The test established by the zoning ordinance in issue was whether the development would "substantially increase traffic hazards or congestion." *Id.* at 234. Some increase in traffic congestion was not sufficient to meet the ordinance test for denial of the application. *Id.* The Boone County ordinance establishes a less stringent test. It provides "the establishment of a conditional use permit will not hinder the flow of traffic or result in traffic congestion on the public streets." The lay testimony here established that the road was already congested and dangerous and that the addition of several hundred vehicles a day would only increase and that the addition of several hundred vehicles per day would only increase existing congestion. The Commission was permitted to believe this evidence and, if it did, that the development failed to meet the test of the ordinance. We conclude that the combined testimony of the neighbors constituted competent and substantial evidence that the flow of traffic would be hindered if the conditional use permit was granted.

In support of its conditional use permit application, Windy Point presented a traffic study by Shafer Kline & Warren. Ron Petering, an engineer with Shafer Kline & Warren, testified regarding the report. He testified that the level of traffic service in and around the development would be a "B" on a scale of "A" to "F". He testified that at a "B" level, traffic "still operate[s] at an extremely high level of service, an extremely acceptable level of service. Delays in that range from 10 to 15 seconds per vehicle."

■ Clearly, there was a conflict in the testimony presented at the hearing before the Commission. While the conflict, here, is between testimony offered by an expert witness and lay testimony, we reiterate that Windy Point concedes that

the neighbor's lay opinion testimony was competent on the issues. In resolving this conflicting testimony, the Commission was required to decide what testimony was more credible and was entitled to greater weight. *See Murphy v. Bd. of Zoning Adjustment of Kansas City*, 593 S.W.2d 549, 554 (Mo.App.1979) (citing *Mo. Church of Scientology v. State Tax Comm'n*, 560 S.W.2d 837, 843 (7, 8) (Mo. banc 1977)). Our review of the Commission's credibility determinations is very narrow, as the administrative entity "is charged with passing on the credibility of all witnesses and may disbelieve testimony absent contradictory evidence and the acceptance or rejection of any lay or expert testimony may not be disturbed on review unless its acceptance or rejection is against the overwhelming weight of the evidence." *Fischer v. Archdiocese of St. Louis–Cardinal Ritter Inst.*, 793 S.W.2d 195, 199 (Mo.App. 1990).

In our view, Windy Point has failed to establish that the Commission's credibility determinations were against the overwhelming weight of the evidence. We therefore defer to the Commission's credibility determinations and hold that there was competent and substantial evidence to support the Commission's finding that the development would "hinder the flow of traffic" or result in "traffic congestion on the public streets," under § 15.A (2)(g). Point denied.

Returning to Windy Point's first point on appeal, it argues that the Commission erred in denying the conditional use permit for the mobile home park because it arbitrarily and capriciously ignored the lake in its calculation of the density standard. In finding that the conditional use permit application was detrimental to the public health, safety, comfort, or general welfare in violation of Section 15.A (2)(a) of the Boone County Zoning Ordinance, the Commission found that the average density within the conditional use permit area did not meet the R–S 7,000 square foot requirement. The Commission specified that it had excluded the lake from the net development area for this calculation. The Commission also found that the conditional use permit area contained insufficient park and recreation area in violation of Section 15.A (2)(a) because the lake did not provide adequate opportunities for year-round recreation.

Windy Point argues that the Commission misapplied § 6.B (3) of the zoning ordinance, which specifies that "[t]he area set aside for common open space or recreational use shall be included in determining the number of dwelling units permitted." "Open space" and "recreational space" are not defined in the ordinance, nor is there any requirement that recreational space be suitable for year-round use.

While there may be a question as to whether the Commission misapplied that ordinance in its denial of the application for a conditional use permit, we need not resolve that question, as the Commission properly denied the application on the grounds discussed above regarding Windy Point's second point on appeal. We need not resolve this alternative basis for the denial of the conditional use permit. Point denied.

■ Windy Point's third point on appeal argues that, assuming that the conditional use permit should have been approved, the Commission's refusal to rezone the property constituted error as a matter of law. As discussed above, the conditional use permit was not improperly denied. As such, the Commission was not required as a matter of law to approve the rezoning. Windy Point's third point on appeal is denied.

■ In its fourth point on appeal, Windy Point contends that the Commission erred in denying the conditional use permit because the Commission and the Boone County Planning and Zoning Commission failed to follow procedures laid out in the Boone County Ordinances and in § 64.830, RSMo. Windy Point argues that Boone County was required by the Zoning Ordinance Section 15.A(1) to consider the application within sixty days of the March 29, 2000, application date. Windy Point contends that the Commission failed to meet that deadline by not considering the application until July 20, 2000.

Section 15.A(1) of the Boone County Zoning Ordinance establishes a sixty-day deadline for the Planning Commission to make a recommendation to the County Commission regarding approval or denial of a request for a conditional use permit. That sixty-day period begins to run from "the date of referral to the Planning Commission." Windy Point appears to assume, without authority or citation to the record, that the original application begins the running of the sixty-day period rather than the date the application was referred to the Planning Commission. The Commission contends that, after the application is filed, the County Commission must refer it to the Planning Commission. The language of § 15.A(1) supports the Commission's argument, which states, in part, "[t]he County Commission shall refer the application to the Planning Commission for investigation and public hearing." The Commission indicates that there is nothing in the record on appeal that indicates when that referral took place, but notes that there is a file stamp on the preliminary plat dated June 8, 2000.

Even if the Planning Commission's recommendation was not made in a timely manner, the ordinances provide that the application is assumed to have been approved by the Planning Commission. The Planning Commission's recommendation, however, is merely that—a recommendation. Here, the County Commission held its own evidentiary hearing on the issue and had an independent basis upon which to approve or deny the Windy Point conditional user permit application. As such, Windy Point was not prejudiced by the delay, if any, in the proceedings before the Planning Commission.

Windy Point also contends, however, that its application was not decided by the County Commission in a timely manner. Section 15.A(1) does state that the County Commission shall "either approve or deny the request or continue action for no more than 45 days." Here, the County Commission held its hearings on September 19, 2000, but did not deny the Windy Point application until roughly three months later. Even if the County Commission delayed its decision beyond the time periods set out in the ordinance, that ordinance does not require that the conditional use permit application be automatically deemed approved. Unlike the provision applicable to the Planning Commission, the language of the ordinance sets out no consequences for situations in which the County Commission fails to comply with the provisions of the ordinance. While failure to follow the procedural requirements of the ordinance might be grounds to seek mandamus, to compel the Commission to make a decision, it does not provide a basis upon which the court may reverse the Commission's resulting decision to deny the application.

Windy Point also argues that § 64.830, RSMo, which permits the County Commission to deem a plat approved if it has not been reported upon for thirty days, required the County Commission to approve its plat. Boone County argues that § 64.830, RSMo, does not apply to re-

828

quests for rezoning, and points out that this language merely *permits* the Commission to deem the plat approved. Even if § 64.830, RSMo, applies in the present context, the statute places no deadlines upon the decision of the County Commission. Indeed, the statute only defines the duties of the Planning Commission. It does not require the County Commission to approve a plat approved by the Planning Commission, regardless of whether that approval was express or inferred by expiration of the statutory deadline.

Windy Point is not entitled to relief based upon the delays it alleges. Point denied.

For its final point on appeal, Windy Point alleges that the denial of its conditional use permit was error because it denied Windy Point equal protection under the Missouri and United States Constitutions. The thrust of its argument is that the Commission's decision shows that it is applying the ordinances to discriminate against mobile home developments. Windy Point contends that the Commission may not apply the ordinances in an unequal manner unless it has rational basis to do so.

While Windy Point's brief contains a general discussion of equal protection principles and how they might apply to enforcement of ordinances in general, the brief fails to articulate *how* the Boone County Commission has improperly applied the zoning ordinances under those principles. Only in its reply brief does Windy Point argue the specifics of how the Commission allegedly enforced the ordinances in an unconstitutional manner. Specifically, Windy Point contends that the improper application of the ordinances was due to the imposition of additional requirements with regard to determining the maximum allowable density in a planned residential development.

As stated previously, the Boone County Commission could properly deny Windy Point's application for a conditional use permit based upon its findings regarding the detrimental effects the development would have on vehicle traffic in the area. As the Commission made such a finding, and that finding is sufficient to support the denial of Windy Point's application, the question of whether the Commission improperly applied the ordinances concerning the maximum density of a planned residential development is moot. We need not, therefore, reach this point on appeal. Point denied.

Finding that the Commission did not err in the proceedings below, the Commission's decision is hereby affirmed.

PATRICIA A. BRECKENRIDGE, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.