**Teresa HOHENSEE, Respondent,**

v.

**DIVISION OF MEDICAL SERVICES, State of Missouri, Appellant.**

**No. ED 83135.**

Missouri Court of Appeals, Eastern District, Division One.

May 11, 2004.

on Appeal is hereby denied.

Jeremiah W. (Jay) Nixon, Atty. Gen., Sarah E. Ledgerwood, Asst. Attorney General, Jefferson City, MO, for Appellant.

Scott M. McKinnis, Hockensmith Tatlow Zoole McKinnis, P.C., St. Louis, MO, for Respondent.

ROBERT G. DOWD, JR., Judge.

The Division of Medical Services (DMS) appeals the trial court's judgment reversing the decision of the Director of DMS to place a roommate with Teresa Hohensee (Hohensee). The trial court ordered Hohensee to remain in an individualized living environment and to receive support under the Medicaid Waiver Program. On appeal, DMS argues the trial court erred in reversing the decision of the Director of DMS because (1) the court's review was improper under Section 208.100 RSMo,

$2000,$[1] and (2) the Director's decision was based on competent and substantial evidence as required by Sections 208.100 and 536.140. We reverse and remand.

Hohensee is a 43 year-old woman who has been diagnosed with Prader–Willi Syndrome. Prader–Willi Syndrome is a genetic disorder causing an alteration of the hypothalamus which results in uncontrolled eating, short stature, incomplete sexual maturation, mental retardation, aggression, and skin-picking to the bone. Hohensee receives Medicaid benefits and participates in a Medicaid Waiver Program for persons who have mental retardation and developmental disabilities.[2] The waiver program provides funding for home and community-based services including Individual Supported Living (ISL) services in lieu of placement in an institution or facility.

Under the waiver program, it is the obligation and focus of DMH to identify what services are needed for the client. While preferences and input from other individuals may be considered, DMH and DMS are not required to provide services according to the client preference. DMH develops a plan of care for each individual based on her needs. In addition to serving clients according to their needs, DMH and DMS are responsible for ensuring that the waiver program is run in a cost-effective manner. Under the Federal Social Security Act, the Secretary may waive most requirements of the Medicaid section of the Act "to the extent the Secretary finds the proposed improvements or specified practices in the provision of services under Medicaid to be cost effective, efficient, and consistent with the objectives of the Medicaid Program." 42 U.S.C. Section 1396n(b). Under such waiver:

> the average per capita expenditure estimated by the State in any fiscal year for medical assistance provided with respect to such individuals [can]not exceed 100 percent of the average per capita expenditure that the State reasonably estimates would have been made in that fiscal year for expenditures under the State plan for such individuals if the waiver had not been granted.

42 U.S.C. Section 1396n(c)(2)(D).

While the in-home services budget is flexible, the program will only pay for services actually needed. Hohensee's Plan of Care indicates a need for ISL. DMH did not find a need for 24–hour–a–day one-on-one care. Therefore, DMH determined the placement of a roommate would be appropriate. At the time of the hearing, however, Hohensee had been living alone for two years because there had not been a suitable roommate for her in Franklin County.[3]

In 2001, Dr. Kruse requested that DMH cease searching for a roommate for Hohensee. Dr. Kruse objected to the placement of a roommate stating it was a reduction in services. Dr. Kruse argued that the placement of a roommate with Hohensee was a reduction in services because

---

**1.** Unless otherwise indicated, all further statutory references are to RSMo 2000.

**2.** DMS is a division of the Department of Social Services(DSS). DSS/DMS has delegated authority via interagency agreement to the Department of Mental Health (DMH) and Division of Mental Retardation and Developmental Disabilities (MRDD), for the administration of this waiver program. As the single Medicaid agency in the state, the Department of Social Services and DMS retain oversight responsibility for the waiver.

**3.** Dr. Ronald Kruse, the provider of services to Hohensee, only serves people from the Franklin County area so that a search for a potential roommate could not be made on a statewide basis.

she would have to share her 24–hour–per–day caretaker with that roommate.

DMS responded by stating that the placement of a roommate was not a reduction of services because while the ISL budget would be altered, the level of services would remain the same. Dr. Kruse again objected to the placement of a roommate. DMS then issued its decision stating that the placement of a roommate was not a reduction in services. At this time, Hohensee was also informed of her right to appeal DMS's decision.

Thereafter, Dr. Kruse requested a hearing before a DMS hearing officer delegated to conduct the hearing to appeal the decision on Hohensee's behalf. Both Hohensee and DMH presented evidence at the hearing and DMS admitted exhibits into evidence without objection by Hohensee's representative. After the hearing was conducted at which eight different witnesses, five on behalf of Hohensee and three on behalf of the agency, testified, the Director of DMS considered the testimony of the witnesses, reviewed all the relevant materials, and issued his decision. In an eleven-page decision that included findings of fact and conclusions of law, the Director determined there was no showing that Hohensee needs 24–hour–per–day one-on-one services. In the absence of that showing, the Director determined that DMS was not required to maintain the one-on-one environment and affirmed the decision of the Director to place a roommate with Hohensee. Finally, the Director determined there was no reduction in Hohensee's services.

Hohensee appealed that decision to Franklin County Circuit Court. The trial court held an evidentiary hearing prior to taking the matter under advisement on Hohensee's Motion to Present Additional Evidence. Hohensee sought to supplement the administrative record that contained the transcript of the administrative hearing and all exhibits with the deposition of Dr. Barbara Goff,[4] who was acquainted with Prader–Willi Syndrome. Dr. Goff testified in her deposition that a roommate should not be placed with Hohensee because of past aggression with other roommates. Dr. Goff opined that this aggression would resurface with a new roommate. The trial court granted the motion and accepted the deposition transcript of Dr. Goff into evidence. The trial court issued its decision reversing the decision of the Director of DMS. The trial court found that the decision was not supported by competent and substantial evidence and determined that the placement of a roommate was a reduction in services. DMS now appeals.

■ In its first point, DMS argues the trial court erred in reversing the decision of the Director because the trial court's review was improper under Section 208.100, which provides that the court is to review the record of the proceedings before the Director and issue an order accordingly. Specifically, DMS contends the trial court erroneously held an evidentiary hearing and admitted the deposition of Dr. Barbara Goff. We agree.

In reviewing a court-tried civil case, we must uphold the decision of the trial court unless there is no substantial evidence to support the decision, the decision is against the weight of the evidence, or the trial court has erroneously declared or applied the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Any claimant aggrieved by a decision of the Director of the Division of Family

---

4. Dr. Goff's deposition was not presented at the administrative hearing. Dr. Goff essentially advocated the same position as that advocated by Dr. Kruse at the hearing.

Services (DFS)[5] may appeal to the circuit court of the county where the claimant resides. Section 208.100(1). The circuit court tries the matter upon the record of the proceedings had before, and certified by, the Director. Section 208.100(4). The court reviews the certified records pursuant to Section 536.140 and issues its decision accordingly. Thus, the circuit court must confine its review of the Director's decision to the certified record. Sections 208.100(4) and 536.140(1); *Nenninger v. Department of Social Services, Division of Family Services*, 898 S.W.2d 112, 116 (Mo. App. S.D.1995). Only if the decision of the agency being reviewed does not involve discretion on the part of the agency and is mere application of the law to the facts can a court consider additional evidence. Section 536.140(3); *Nenninger*, 898 S.W.2d at 116. Furthermore, the court can only consider additional information if, after an evidentiary hearing, the court determines that the party moving for the admission of the evidence could not have found it by reasonable diligence prior to the hearing or the evidence was improperly excluded at the hearing. Section 536.140(4); *Pearman v. Department of Social Services*, 20 S.W.3d 540, 541 (Mo.App. W.D.2000). In absence of the court determining that the record is incomplete, an evidentiary hearing is not convened and thus, additional information is excluded. *Id; Nenninger*, 898 S.W.2d at 116.

In this case, the trial court erroneously held an evidentiary hearing and admitted the deposition of Dr. Goff. The DMH's decision was not a mere application of law to facts. DMS/DMH had discretion in determining how best to meet Hohensee's needs in the most cost-effective way. DMS/DMH determined the most cost-ef-

fective and therapeutic way to meet her needs was the placement of a roommate. As stated previously, in the case that agency discretion was involved, the court reviews only the administrative record below. *Nenninger*, 898 S.W.2d at 116. We also note that in making its decision, the trial court ruled that the Director of DMS, among other things, abused his discretion. Here, the trial court should not have added to the agency record by admitting the deposition of Dr. Goff.

Even if no agency discretion were involved, the admission of the deposition by the trial court is still erroneous. Even when the agency decision was merely the application of the law to the facts, additional information can only be admitted upon a showing that the evidence could not have been found by reasonable diligence or was improperly excluded at the administrative level. Section 536.140(4); *Pearman*, 20 S.W.3d at 541. In this case, there is no basis for concluding that Hohensee could not have obtained the evidence with reasonable diligence.

At the time of the administrative hearing, Dr. Goff was in the same position and had obtained the same level of expertise as the time the deposition was taken. There was no evidence that Dr. Goff was unavailable at the time of the administrative hearing. Further, there was no evidence adduced that Dr. Goff is the only expert in the area and that no other expert could have testified at the administrative hearing. Dr. Goff was not contacted until November 2002, one year after the administrative hearing was held.

Moreover, while Hohensee was not represented by counsel, she was made aware of her rights with regard to the hearing.

---

**5.** Section 208.201 established the DMS within the DSS and transferred all powers, duties and functions of DFS to the DMS.

She had the right to obtain counsel and additional witnesses but chose not to do so.[6] There is no evidence in the transcript from the evidentiary hearing that there was any due diligence on the part of Hohensee to obtain Dr. Goff's services. Therefore, the admission of her deposition into evidence was erroneous. Point granted.

■ In its second point, DMS argues the trial court erred in reversing the decision of the Director because the decision was based on competent and substantial evidence as required by Sections 208.100 and 536.140, in that the evidence before the Director demonstrated that Hohensee could be placed with a roommate. We agree.

■ In reviewing a contested administrative case, we review the decision of the agency, not that of the circuit court. *Sutton v. Missouri Dep't of Social Serv.*, 733 S.W.2d 830, 831 (Mo.App. S.D.1987)(citing *Fleming Foods of Missouri, Inc. v. Runyan*, 634 S.W.2d 183, 184(Mo. banc 1982)). Our review is limited to determining whether the decision of the agency was supported by competent and substantial evidence based upon the entire record, whether the decision was arbitrary, capricious or unreasonable, or whether the agency abused its discretion. Section 536.140.2; *Mertzlufft v. Civil Service Comm.*, 85 S.W.3d 63, 65–66 (Mo.App. E.D.2002). Importantly, when we review the agency's decision, we consider the evidence and all reasonable inferences from that evidence in the light most favorable to the agency's decision. *Angelos M.D. v. State Bd. of Registration for the Healing Arts*, 90 S.W.3d 189, 191 (Mo.App. S.D. 2002). The agency decision is presumed to be valid and the burden is on the claimant

to overcome that presumption. *Angelos, M.D.*, 90 S.W.3d at 191.

■ Finally, the determination of witness credibility belongs to the administrative tribunal as that individual had the opportunity to observe the witness. *Dorman D.O. v. State Bd. of Registration For The Healing Arts*, 62 S.W.3d 446, 454 (Mo. App. W.D.2001). Unless that credibility determination is against the overwhelming weight of the evidence, it shall not be disturbed. *Windy Point Partners, L.L.C. and B–Sib L.L.C. v. Boone County by and through Boone County Commission et al.*, 100 S.W.3d 821, 826 (Mo.App. W.D.2003).

■ Here, the trial court found the decision of the Director of DMS was not supported by competent and substantial evidence upon the whole record, was arbitrary, capricious and unreasonable, and was an abuse of discretion. Substantial evidence is competent evidence, which, if believed, has probative force regarding the matter at issue. *Windy Point Partners, et al.*, 100 S.W.3d at 825. Evidence is substantial if it supports the agency's determination. *Id.; see also Mertzlufft*, 85 S.W.3d at 66. Further, the agency decision is sufficiently supported if the administrative tribunal could have reasonably reached the challenged decision. *Garner v. Missouri Division of Family Services*, 591 S.W.2d 27, 28 (Mo.App. E.D. 1979).

After a review of the record, we find the decision of the Director of DMS was supported by competent and substantial evidence. The testimony of Louisa Hill shows that a roommate would be therapeutic for Hohensee. Ms. Hill is the Division Director of St. Louis office of Open Options, Inc., which is associated with the United Cerebral Palsy Association. Ms. Hill runs seven group homes in the St. Louis area, five of which deal with Prader–

---

6. We also note that Hohensee's mother/guard-   ian was present and testified at the hearing.

Willi clients. Ms. Hill has experience in finding appropriate roommates for Prader–Willi clients and DMS considers her to be an expert in dealing with Prader–Willi clients. According to Ms. Hill, Prader–Willi clients need another person around them. For people with Prader–Willi Syndrome, their world typically revolves around themselves and a roommate is therapeutic because the roommate teaches them to interact with others. It is a goal of those who work with Prader–Willi clients to help them be responsible members of the community and the roommate is a useful tool to achieve that. Thus, according to Ms. Hill, who has years of experience in dealing with Prader–Willi clients and matching roommates, there is therapeutic value in the placement of a roommate. The testimony is probative of the issues and supports the DMS's determination. Based on Ms. Hill's testimony it was reasonable for the hearing officer to conclude placement of a roommate is not a reduction in services.

The Director also relied on the testimony of Donna Adam, Rolla Regional Center Director. Ms. Adam testified with regard to DMH's role in the placement of the roommate with Hohensee. DMH understands its obligation to carefully match Hohensee with an appropriate roommate with similar issues. To that end, DMH has relied on input from Dr. Barbara Whitman. Dr. Whitman provides DMH with input on a regular basis. The Director accepted as exhibits two letters from Dr. Whitman. The letters of Dr. Whitman, who has worked with Hohensee for several years, provide the criteria for appropriately matching Hohensee with a roommate. DMH's desire to appropriately match Hohensee with a roommate is the very reason she has been without one for two years. She has not been living alone because that is the level of services for which she has been approved. Rather, it is the care and concern of DMH to place

her with an appropriate roommate that led to the temporary increase in her budget and her living situation. There is competent and substantial evidence contained in the record to support the Director of DMS's decision.

Finally, the Director found that the placement of a roommate with Hohensee did not constitute a reduction of services. He made this finding after considering the vast administrative record produced at the hearing. The evidence showed Hohensee was never authorized for one-on-one 24–hour–per–day services she is currently receiving. The increase in her budget was temporary on a month-by-month basis until an appropriate roommate could be found. Temporary has become two years. While it is the obligation of DMS to provide services for eligible individuals, it is also their obligation to do it in the most cost-effective manner available. By placing a roommate with Hohensee, the cost will be reduced but the hours of service she receives, 24–hours per day, will remain the same. If Hohensee does not receive a roommate, the hours of care will have to be reduced to offset the one-on-one care she has been receiving for two years. The placement of a roommate is both cost-effective and provides the level of care for which Hohensee was authorized. Therefore, Hohensee is being returned to the level of services for which she was approved. The decision by the Director was reasonable in light of the totality of the evidence adduced at the hearing.

The Director also relied on the testimony of Ms. Adam. In addition to her testimony regarding the appropriateness of placing a roommate with Hohensee, Ms. Adam testified that the addition of a roommate is not a reduction in services. The reason Hohensee had been living alone is there was no appropriate roommate for her in Franklin County at the time. Therefore, the increase in her budget for

services was only a temporary one until a roommate could be found. Thus, adding a roommate does not reduce her services as she was never permanently approved for one-on-one 24–hour–per–day service.

The administrative record contains competent and substantial evidence which when considered as a whole supports the Director's decision that the placement of a roommate with Hohensee does not constitute a reduction in services. While there may be conflicting testimony, the Director evaluated all the evidence and issued his decision accordingly. Upon review of an agency matter, if there is conflicting evidence the reviewing court must defer to the agency that acted as fact finder and accept those findings. *Dorman, D.O.,* 62 S.W.3d at 455; *see also Angelos, M.D.,* 90 S.W.3d at 192. Here, there is competent and substantial evidence, including the testimony of Ms. Hill and Ms. Adam as well as the letters of Dr. Whitman, to support the hearing Director's decision. Moreover, as Hohensee was never authorized to have the level of care she is receiving, there is no reduction in services and therefore the decision is clearly not arbitrary. Finally, it is the obligation of the State to effectuate services for individuals in a cost-effective manner. While the State accepted the additional costs associated with Hohensee's current living situation on a temporary basis, it is not required, based on her Plan of Care, to do so permanently. Therefore, it was not an abuse of discretion to return Hohensee to the level of care for which she was authorized. The decision of the trial court is reversed and the cause is remanded to reinstate the Director's decision.

GARY M. GAERTNER, SR., P.J. and MARY R. RUSSELL, J., concur.