**Patrick J. HUTCHINGS, by his guardian, John R. Hutchings, Respondent,**

v.

**Steve ROLING, Director, Missouri Department of Social Services, Appellant.**

No. ED 84320.

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 7, 2004.

---

**3.** The DOC's Motion to Strike Portions of Tipton's Supplemental Legal File/Record on

Appeal is denied.

Trevor Bossert, Assistant Attorney General, Jefferson City, MO, for appellant.

Thomas E. Kennedy, III, Alton, IL, John J. Ammann, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Presiding Judge.

In this consolidated appeal, Steven Roling, the Director of the Department of Social Services ("Director"), appeals from two judgments of the St. Louis County Circuit Court, which: (1) reversed the Department of Social Services, Division of Medical Services' ("Division") determination, that, due to a lack of State funding, Patrick Hutchings ("P.J.") was placed on a waiting list for a slot in a Mental Retarda-

tion Developmental Disabilities ("MRDD") and Home and Community Based Services ("HBCS") waiver program and ordered that P.J. be granted a waiver slot, and (2) granted P.J. attorney's fees in the amount of $18,070.00.[1]

P.J. urges the Court to uphold the Circuit Court's judgment on the grounds that the Division's decision was unsupported by competent and substantial evidence and unauthorized by law. In addition, P.J. seeks a ruling affirming the Circuit Court's award of attorney's fees. The Director responds that the Division's decision was supported by competent and substantial evidence and asks that we affirm the Division's decision and reverse the Circuit Court's award of attorney's fees on the ground, *inter alia*, that it was premature. Because we find that the Division's decision was not supported by substantial evidence on the record as a whole, we affirm the Circuit Court's judgment. With respect to the Circuit Court's award of attorney's fees, we agree with the Director that the award was premature and, thus, reverse and remand to the Circuit Court on this basis only.

### Factual Background and Proceedings Below

P.J. is a young man in his twenties who has been diagnosed with Rubenstein–Taybi syndrome. Rubenstein–Taybi syndrome is a developmental disability, which causes various physical deformities, behavior disorders, and mental retardation. P.J. has an IQ of 45–50, minimal independent living skills, and cannot be left alone. On May 10, 2002, P.J., through his father,

John Hutchings, applied to the Division of Mental Retardation and Developmental Disabilities ("DMRDD") of the Department of Mental Health for funding for services through the Medicaid HBCS waiver program. The HBCS waiver program is designed to provide support services to mentally retarded or developmentally disabled individuals who otherwise would require services in a nursing home or an intermediate care facility for the mentally retarded.[2]

On May 17, 2002, Kathleen Hopkins, Assistant Director, St. Louis Regional Center for Developmental Disabilities, sent Mr. Hutchings an "official memorandum" regarding "Notice of Eligibility Status for the MRDD Medical Home and Community Based Waiver. Effective Date 5/15/02." In this memorandum, Ms. Hopkins advised that P.J. was eligible for a waiver effective May 15, 2002. However, by the same correspondence, Ms. Hopkins also informed Mr. Hutchings that, because of a lack of funds, the DMRDD's St. Louis Regional Center was unable to "service additional individuals." According to Ms. Hopkins' correspondence, rather than issuing the waiver, the DMRDD placed P.J. on a 166 person waiting list. In addition, Ms. Hopkins' memorandum advised that movement off the waiting list depended upon "prioritized need," with "Priority I status" given to the homeless, individuals whose physical, emotional or mental health is in jeopardy, and individuals who are evaluated as being a threat to "self or others."

Following receipt of the May 17 correspondence, Mr. Hutchings requested a

---

1. Although the Director filed the notice of appeal from the Circuit Court's reversal of the Division's decision, P.J. files the appellant's brief and reply brief, and the Director files the respondent's brief, pursuant to Rule 84.05(e). Pursuant to Rule 84.04(j), the Director's re-

spondent's brief also contains his arguments on appeal from the award of attorney's fees.

2. The DMRDD denied P.J.'s previous November 2001 application because, at that time, P.J.'s needs were being met by the Special School District.

hearing on the DMRDD's refusal to issue a waiver slot. On September 16, 2002, Mr. Hutchings received a hearing before a hearing officer for the Division of Legal Services. The hearing officer identified the issue as the Division's decision to render P.J. eligible to participate in the waiver program and placing him on the waiting list "due to lack of [S]tate funding."

The agency called two witnesses, Ms. Hopkins and Kay Green, the Department of Mental Health's Federal Programs Director for the DMRDD. Ms. Hopkins, who sent the May 17 "official memorandum" to Mr. Hutchings, testified that she was unaware of any priority criteria in effect when she received Mr. Hutchings' request, had contacted the "Central Office" to determine how to respond, and was instructed to place P.J. on a waiting list.

Ms. Green testified that Missouri submitted an application to the Centers for Medicare and Medicaid Services ("CMS") for the purpose of lowering the number of individuals eligible to be served by the waiver program for the fiscal year beginning July 1, 2002. Specifically, Missouri sought to reduce the number of individuals to be served during the Fiscal Year 2002 from 8,545 to 8,147. The Missouri Department of Social Services stated in correspondence sent to CMS on March 21, 2002, that "[t]hese changes are requested due to shortfalls in the [S]tate's projected budget collections that resulted in appropriation withholdings this current year, and anticipated appropriation reductions for the fiscal year that begins July 1, 2002." CMS responded to Missouri's request through correspondence received by the Department of Social Services on May 17, 2002, and approved the reduction in waiver slots effective July 1, 2002.

Ms. Green provided testimony and documentation indicating that there were available unfilled waiver slots as of the date the DMRDD declared P.J. eligible for a waiver, but refused to issue a slot. In addition, according to Ms. Green's evidence, at least 49 individuals obtained waiver slots between May 15, 2002, and July 1, 2002. Finally, Ms. Green testified that the new criteria for grant of a waiver slot were effective as of July 1, 2002.

Following the hearing, the Director of the Division issued a Decision and Order concluding that the Division placed P.J. on a waiting list "due to lack of State funding" and affirming the Division's action in placing P.J. on a waiting list. P.J. thereafter appealed to the Circuit Court, pursuant to Section 208.100, R.S.Mo.2000.[3] The Circuit Court reversed, holding that the Division's decision was unauthorized by law, and ordering that the Director remove P.J. from the waiting list and provide him with a waiver slot. Thereafter, the Circuit Court granted P.J. attorney's fees, pursuant to Section 536.087, R.S.Mo. This consolidated appeal followed.

### Standard of Review

We review the agency's decision rather than the judgment of the Circuit Court. *Hohensee v. Division of Medical Services*, 135 S.W.3d 512, 517 (Mo.App. E.D.2004). We uphold the agency's decision unless the decision is not based on substantial and competent evidence on the whole record; is unreasonable, arbitrary, or capricious; or is an abuse of discretion. *Id.* at 517. We view the evidence in the light most favorable to the agency's decision, giving the decision the benefit of all reasonable inferences. *Id.*

When reviewing the Division's factual findings, "we determine whether they are

---

**3.** All further statutory references are to R.S.Mo.2000 unless otherwise noted.

supported by substantial evidence upon the record as a whole." *Bruemmer v. Mo. Dep't. of Labor Relations,* 997 S.W.2d 112, 115 (Mo.App. W.D.1999). Evidence is substantial if it is "competent evidence from which a trier of fact can reasonably decide the case." *Bedford Falls Co. v. Division of Employment Sec.,* 998 S.W.2d 851, 857 (Mo.App. W.D.1999). Witnesses' conclusions, where devoid of any factual support, do not rise to the level of substantial and competent evidence. *State ex rel. Church's Fried Chicken v. Board of Adjustment,* 581 S.W.2d 861, 865 (Mo.App. 1979). Nor is evidence substantial where a reasonable mind would not accept it as sufficient to support a particular conclusion, even when granting all reasonable inferences. *Jones v. Mo. Highway & Transp. Com'n,* 878 S.W.2d 521, 523 (Mo. App.S.D.1994).

Our review of the trial court's award of attorney's fees and expenses is limited to determining whether the trial court's determination was arbitrary and capricious, unreasonable, unsupported by competent and substantial evidence, made contrary to law, or in excess of the court's jurisdiction. *State ex rel. Div. of Transp. v. Sure–Way Transp., Inc.,* 948 S.W.2d 651, 656 (Mo. App. W.D.1997). The trial court is afforded no deference in its determinations of law. *Id.* at 656.

### Discussion

#### A. *The Division's Decision.*

■ P.J. argues in his first point that the Division's decision affirming the action placing him on a waiting list for a waiver due to lack of State funding is unsupported by the record. More specifically, P.J. contends that the so-called "emergency criteria," which the DMRDD used to deny him a waiver, for which he was otherwise eligible, were not in effect on the date of the denial. The Director responds, in circular fashion, that the denial letter sent to P.J. on May 17 states that application of the emergency criteria resulted in his denial and, therefore, the criteria existed on the date of his denial. Other than the denial letter, the record is devoid of any written documentation reflecting the existence of "emergency criteria" applicable to P.J. as of May 15, 2002.

As an initial matter, both parties have lost sight of the issue P.J. appealed to the Department of Social Services and the decision the Division rendered. The hearing officer identified the "issue being appealed," as follows: "The agency has determined Claimant to be eligible to participate in the Mental Retardation and Developmental Disabilities (MRDD) and Home and Community–Based Services waiver effective May 15, 2002, and placed him on a waiting list due to lack of State funding." The Division's decision provided, in pertinent part: "Due to lack of [S]tate funding, Claimant was placed on a waiting list ... The State does not have sufficient funds to provide services to additional individuals unless someone leaves the waiver and free [sic] up some funds to service another person based on the priority system." Clearly, the Division decided that lack of State funds was the basis for P.J.'s placement on a waiting list. Thus, the issue to be decided here is whether competent and substantial evidence in the record supports such a finding.

The Division addressed the issue of State funding generally through testimony and documentation establishing that the State sought and received approval from CMS to reduce the number of available waiver slots for the Fiscal Year 2002 due to State budget constraints. The agency's two witnesses, Kathleen Hopkins and Kay Green, consistently testified, and the Division found, that the approval to reduce the

waiver slots was effective July 1, 2002.[4] The DMRDD, however, declared P.J. to be eligible for a waiver on May 15, 2002, at least six weeks prior to the effective date of the reduction in waiver slots.

The only evidence the Division presented with respect to the impact of State funding specifically on P.J. was a comment from Ms. Green: "The reason it's my understanding that the reason that Mr. Hutchings [sic] son was not assigned a waiver slot was not based upon that we did not have a slot, it was based upon we did not have available funding." The Division provided no factual support for this statement beyond Ms. Green's conclusory remark.

The Division testimony with respect to the priority criteria supported the conclusion that the policy was not in effect on May 15, 2002, the date P.J. was declared eligible for a waiver slot. Ms. Hopkins, the Assistant Director of the St. Louis Regional Center, who responded to Mr. Hutchings' 2002 request for a waiver with the May 17 letter declaring P.J. eligible, but placing him on a waiting list, testified that when she received P.J.'s request for a waiver in May she was unaware of any waiver prioritization process. She further testified that the substance of the May 17 letter was sent to her by the "Central Office" and she did not know the basis for it. Ms. Hopkins also testified that the criteria for waivers changed effective July 1, 2002. Ms. Green testified that the emergency waiting list was created in the spring of 2002, but the "official document"

was dated July 1, 2002.[5] In addition, the documentary record reflects that as late as June 2002 the DMRDD was conducting high-level meetings to determine how to handle the waiver program in light of budget shortfalls, but no final policy had been enacted. Comprehensive recommendations developed by the DMRDD's "Waiver Restructure Management Advisory Team" and submitted to Dr. Anne Deaton, DMRDD's Director, advised that:

> The MRDD Waiver was renewed effective July 1, 2001, for an additional 5 years. A January 4, 2001 letter to State Medicaid Directors from CMS made it clear that once a State asks for approval to serve a set number of persons in a year, *the State is obligated to make slots available for eligible persons.* CMS informed States that *not having sufficient funds for all of the slots approved was not a reason to deny potential participants access.*

(Emphasis added.)

The testimony with respect to the availability of a slot on the date P.J. was declared eligible for a waiver was also uncontroverted. Ms. Green clearly established that there were hundreds of waiver slots available between May and July 2002. When asked at the hearing whether adults received waivers after May 15, 2002, Ms. Hopkins responded: "Yes afraid so."

This is not a record in which there are conflicts. Rather, all of the evidence supports the conclusion that the criteria for waivers were changed effective July 1,

---

**4.** Ms. Green also testified that the State's request was retroactive until July 1, 2001. However, even if retroactive, Medicaid's approval letter clearly stated that "[t]he State assures that the reduction in the number of potential participants will not create an adverse impact on current participants who will continue to have access to the same overall services existing prior to the renewal." Thus,

had P.J. been granted the waiver on May 15, when he was declared eligible, he would have been a participant and the agency could not take adverse action by virtue of the retroactive application of Medicaid's approval of the State's reduction in waiver slots.

**5.** The Division did not place the "official document" into the record.

2002, and that slots were available at the time the DMRDD decided P.J. was eligible. The Director's assertion that DMRDD's letter to P.J.'s father establishes the existence of priority criteria misses the point. The question is whether the priority criteria were applicable to P.J. on the date the DMRDD declared him eligible for a waiver slot. Because both the approved reduction in waivers and the changes in criteria for waivers were not effective until July 1, 2002, and because the DMRDD determined that P.J. was eligible for a waiver slot on May 15, 2002, and slots were available, there was no substantial evidence to support a finding that the DMRDD's refusal to grant the waiver was due either to lack of State funding or the applicability to P.J. of emergency or priority criteria. Accordingly, we affirm the Circuit Court's judgment reversing the Division's decision.[6]

### B. The Circuit Court's Award of Attorney's Fees.[7]

The Director contends that the Circuit Court's award of attorney's fees was erroneous on several grounds, including, *inter alia*, that the award was premature pursuant to Section 536.087.4, R.S.Mo. We agree with the Director that the Circuit Court's fee award was premature, and, thus, we do not reach his other claims of error.

As this Court has previously noted, "[a] prevailing party in a civil action on appeal from an agency proceeding shall submit an application for fees and expenses to the court." *Lincoln County Stone Co., Inc. v. Koenig*, 21 S.W.3d 142, 148 (Mo.App. E.D.2000). However, "when the state appeals the underlying merits of an adversary proceeding, no decision on the application for fees and other expenses shall be made until the underlying merits of the case have been finally determined pursuant to the appeal." *Id.; see also Sure–Way Transp., Inc.*, 948 S.W.2d at 658 ("[Section 536.087.4, R.S.Mo.,] prohibits a decision on the application for fees until a final and unreviewable decision is achieved.") (internal citation omitted). Thus, while a fee application is properly filed prior to a final judgment, it "is held in abeyance until the adversarial proceeding becomes final." *Sure–Way Transp., Inc.*, 948 S.W.2d at 656. Here, approximately one week after the Circuit Court entered an amended judgment in favor of P.J., a hearing was held on P.J.'s application for fees. Accordingly, when the Circuit Court granted the application, the judgment was not yet final. Because "the underlying merits of the case [had not] been finally determined" as of the time the Circuit Court ruled on P.J.'s application for attorney's fees, we find that the issue of attor-

---

6. We disagree with the Director's contention that the Circuit Court's relief constitutes a usurpation of agency authority. The DMRDD, not the Circuit Court, determined P.J. was eligible for a waiver slot. The Director has provided us with no authority for the proposition that in the absence of a properly supported decision to place P.J. on a waiting list, the Division can deny him a waiver slot. The Director has never claimed that P.J. is not eligible or that waiver slots are not available, only that the emergency criteria, which we find, based on this record, do not apply to P.J., require his placement on a waiting list. As documentation created by the DMRDD and submitted to the hearing officer establishes, "once a State asks for approval to serve a set number of persons in a year, the State is obligated to make slots available for eligible persons."

7. Separate from the application of attorney's fees filed in the Circuit Court, P.J. has filed in this Court a "Notice of Intent to Seek Attorney Fees on Appeal." Pursuant to Section 536.087, R.S.Mo, a prevailing party may file an application for reasonable fees and expenses within thirty days of final judgment in a civil case.

ney's fees was not ripe for adjudication. *Lincoln County Stone Co., Inc.*, 21 S.W.3d at 149.

### Conclusion

The judgment of the Circuit Court with respect to the Division's decision and order is affirmed. The Circuit Court's judgment with respect to attorney's fees is reversed and remanded for a hearing on the application for attorney's fees P.J. previously filed in the Circuit Court and any new application filed in connection with the appeal.

KATHIANNE KNAUP CRANE and ROBERT G. DOWD, JR., JJ., Concur.