Patrick J. **HUTCHINGS,** by his guardian, John R. **HUTCHINGS,** Plaintiff/Respondent/Cross–Appellant,

v.

Steven **ROLING,** Director, Missouri Department of Social Services, Defendant/Appellant/Cross–Respondent.

Nos. ED 85999, ED 86019.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 4, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 18, 2006.

Application for Transfer Denied June 30, 2006.

---

338

Thomas E. Kennedy, III, Deborah S. Greider, Law Offices of Thomas E. Kennedy, III, L.C., Alton, IL, John J. Amman, St. Louis, MO, for respondent.

Trevor Bossert, Assistant Attorney General, St. Louis, MO, for appellant.

KATHIANNE KNAUP CRANE, Presiding Judge.

In this consolidated appeal, both parties challenge the trial court's award of attorney's fees to plaintiff in the amount of $25,000 pursuant to section 536.087 RSMo (2000). Defendant, the director of a state agency, argues that the court should not have made any fee award because the underlying proceeding was not an "agency proceeding," as defined in section 536.085(1) RSMo (2000), and his position was substantially justified under section 536.087. Defendant also maintains that no special factor justified a fee award in excess of $75.00 per hour under section 536.085(4). Plaintiff cross-appeals on the grounds that the trial court abused its discretion in making an award that was $17,000 less than that billed and requested, because the trial court's findings did not support a conclusion that a lesser fee was reasonable. We reverse that part of the judgment that awarded a fee in the amount of $25,000 and remand with directions. In all other respects, the judgment is affirmed, including that part of the judgment that awards a fee in excess of $75.00 per hour.

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal involves the Medicaid program and actions by two state departments and various divisions within those departments. As an aid in understanding the factual chronology, we will first describe the Medicaid program and the state agencies involved in this case.

### 1. Medicaid Program

Medicaid is a joint federal-state program that seeks to provide medical assistance to low-income individuals who are unable to meet the costs of their medical care. *See* 42 U.S.C. section 1396 *et seq.* (commonly known as the Medicaid Act); *Boulet v. Cellucci*, 107 F.Supp.2d 61, 64 (D.Mass. 2000). The federal government provides financial assistance through the Medicaid program to those states that elect to participate in the program in order to aid those states in providing health care to individuals in need. *Boulet*, 107 F.Supp.2d at 64. If a state chooses to participate in

the Medicaid program, the state must comply with all federal statutory and regulatory requirements. *Id.* One of those requirements is that the state must submit a state plan providing that "all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. section 1396a(a)(8). Missouri has elected to participate in the Medicaid program. *Maples v. Department of Social Services* 11 S.W.3d 869, 872 n. 3 (Mo.App.2000).

The Medicaid Act allows states to provide home or community-based services in lieu of institutional care with Medicaid coverage through its waiver provision. 42 U.S.C. section 1396n(c)(1); *Boulet,* 107 F.Supp.2d at 64. Missouri has a Medicaid waiver plan.

### 2. *The State Agencies*

#### a. *Department of Mental Health (DMH)*

DMH was established as a state agency by section 630.003 RSMo (2000). The Division of Mental Retardation and Development Disabilities (MRDD) was a division within DMH. Through an interagency agreement, MRDD administered Missouri's Medicaid Home and Community Based Services (Medicaid HCBS) Waiver program, which included determination of client eligibility.

#### b. *Department of Social Services (DSS)*

DSS was established as a state agency by section 660.010 RSMo (2000). Dana Katherine Martin served as Director of DSS at the beginning of the events chronicled in this case. Ms. Martin was succeeded by Steven Renne, who served as Acting Director, and then by defendant, Steven Roling, who served as Director.

The Division of Medical Services (DMS) was a division within DSS. DMS was established by section 208.201 RSMo (2000). Gregory A. Vadner served as Director of DMS. DMS was responsible for the development, administration, and enforcement of Missouri's medical assistance programs, including the Medicaid program. Section 208.201.3. *See* 42 U.S.C. section 1396a(a)(5). However, as set out above, MRDD, a division of DMH, administered the Medicaid HCBS Waiver program. DMS also had a Quality Services Unit, which employed Dean Adkins, R.N. Nurse Adkins coordinated administrative hearings for DMS.

The Division of Legal Services (DLS) was another division within DSS. DLS had the Administrative Hearing Unit that conducted the administrative hearing that is the subject of this case.

### 2. *Chronology*

On May 10, 2002, plaintiff, Patrick J. Hutchings, applied to MRDD for the Medicaid HCBS Waiver program. On May 17, 2002, MRDD sent plaintiff's guardian, John R. Hutchings, a document entitled "Official Memorandum," which advised guardian that although plaintiff was eligible for the waiver program, the state did not have sufficient funding to grant waiver slots to all eligible individuals. The memorandum further advised that plaintiff's name had been added to a waiting list and as funding became available, individuals on the waiting list would be served based on prioritized need, and not in the order in which the individual's name was added to the list. The memorandum also advised guardian that he had appeal rights through both DMH and DSS.

After guardian expressed his desire to appeal MRDD's action and requested a hearing, Nurse Adkins sent guardian a letter advising him that DMS had received

his request for a hearing and had determined the issue he raised could be appealed. The letter included a Missouri Medicaid Hearing Request Form for guardian to fill out and return to DMS, and advised guardian that when DMS received the completed form, DLS would set a hearing. Also enclosed with the letter was a document entitled "Important Information About Your Hearing" that described the hearing process and the decision-making process. The document explained that after the hearing, the hearing officer would send his or her recommendation to the Director of DMS, who would enter a decision and order based upon the evidence and testimony presented at the hearing and the recommendation of the hearing officer. The document also explained that if guardian was dissatisfied with the DMS director's decision, he could appeal the decision and order to the circuit court.

Guardian thereafter requested a hearing on the Missouri Medicaid Hearing Request Form. On the lines for stating the reason for the hearing request, guardian wrote that DMH "refused to issue a Medicaid waiver slot to [plaintiff] after DMH determined that he is eligible and that unused waiver slots exist."

Ofelia Manalang, a hearing officer for the DLS Administrative Hearing Unit, scheduled and conducted the hearing. At the commencement of the hearing on September 16, 2002, Ms. Manalang announced that plaintiff was appealing from the decision of DMH. At the hearing, DMH was represented by Assistant Attorney General Greg A. Perry. Plaintiff was represented by attorney Thomas E. Kennedy, III. Nurse Adkins testified and also called and examined witnesses.

Two months later, the Director of DMS, Director Vadner, entered a Decision and Order affirming the action placing plaintiff on a waiting list. In his Decision, Director Vadner found that DMS had presented substantial and competent evidence that plaintiff had been determined eligible to participate in the Medicaid HCBS Waiver program, and that plaintiff's placement on the waiting list was caused by lack of state funding.

Plaintiff then filed a Petition for Review of Administrative Decision with the trial court pursuant to section 208.100 RSMo (2000). After a hearing, the trial court entered a judgment and order that, as amended, reversed the decision to deny plaintiff a Medicaid HCBS Waiver slot because defendant's decision to deny a waiver slot to plaintiff was unauthorized by law. The court ordered defendant to remove plaintiff from the waiting list and to immediately provide plaintiff with a waiver slot if any unfilled slots existed, or to provide plaintiff with the next available waiver slot.

Plaintiff subsequently applied for attorney's fees pursuant to section 536.087. After a hearing on that application, the trial court entered a judgment and order that awarded plaintiff attorney's fees and expenses in the requested amount of $18,070 for services rendered through December 7, 2004. Defendant appealed from both of these judgments.

We affirmed that part of the trial court's judgment ordering defendant to remove plaintiff from the waiting list and to immediately provide plaintiff with a waiver slot. *Hutchings v. Roling,* 151 S.W.3d 85 (Mo. App.2004) (*Hutchings I* ). We held that "there was no substantial evidence to support a finding that the [ ]MRDD's refusal to grant the waiver was due either to a lack of State funding or the applicability to [plaintiff] of emergency or priority criteria." *Id.* at 91. However, we reversed and remanded that part of the trial court's judgment that awarded attorney's fees because that issue was not ripe for adjudica-

tion until the case became final. *Id.* at 91–92.

On remand, plaintiff filed a supplemental application for attorney's fees. In that application, plaintiff adopted and incorporated by reference his original application for attorney's fees and prayed for a judgment awarding him attorney's fees in the amount of $42,900 and costs in the amount of $573.93. Plaintiff attached Mr. Kennedy's invoice for professional services to this application. The invoice showed that of the 211.0 hours Mr. Kennedy spent on plaintiff's case, he billed 204.4 hours at a rate of $200 per hour, and that of the 15.6 hours Mr. Kennedy's law partner, Deborah Greider, spent on the case, he billed 10.1 hours, also at a rate of $200 per hour.

At the hearing on this application, plaintiff called the following witnesses: guardian; Gregory White, the Hutchings' family attorney; John Ammann, a professor at St. Louis University School of Law and director of the law school's legal clinic; and Mr. Kennedy, plaintiff's attorney. Mr. Kennedy examined guardian and Mr. White; Ms. Greider examined Prof. Ammann and Mr. Kennedy.

All of plaintiff's witnesses testified to the unavailability of attorneys in the metropolitan St. Louis area who were qualified to represent plaintiff. Guardian testified that he had contacted several large law firms, attorneys at two legal services programs, and some individual attorneys. However, each of these attorneys said they were not qualified to handle the case and would not represent plaintiff in the matter, even though guardian was willing to pay a reasonable sum for representation. Mr. White testified that he also contacted a number of large and medium-sized law firms and several sole practitioners on plaintiff's behalf, but could not find an attorney who was qualified to handle the case. Prof. Ammann testified that he knew of only one attorney, other than Mr. Kennedy, who was capable of handling plaintiff's case, and that attorney turned it down. Mr. Kennedy knew of only one other attorney in the metropolitan St. Louis area who had a private practice "remotely" similar to his, but that attorney was now concentrating on employment and abuse cases.

Mr. White testified that he was not qualified to represent plaintiff in this matter because it was a very complicated case that involved Medicaid issues, DSS, federal and state regulations, and a possible appeal to the court of appeals. Prof. Ammann, who had a number of years of experience with Medicaid issues and attorney's fee awards, and also had clerked for two courts of appeals, testified that he would not have been competent to handle all of the aspects of plaintiff's case because of its complexity.

Mr. Kennedy had practiced law since 1971 and was a member of both the Missouri and Illinois Bars. After working for the State of Illinois and Legal Aid programs in Illinois, he went into private practice in 1994. He and his law partner, Ms. Greider, specialized in representing individuals with disabilities and the agencies that serve them. Mr. Kennedy testified that he had represented "hundreds" of clients like plaintiff and had worked with Medicaid issues and represented clients in Medicaid hearings his entire professional career. He gave examples of Medicaid cases that he and Ms. Greider had successfully handled through appeal. He listed the professional awards he received for his work, including one that he and Ms. Greider received jointly. He and Ms. Greider had been teaching trial practice together as adjunct professors at a law school for seven or eight years. While he was cross-examining Mr. Kennedy, counsel for defendant said to him, "There's certainly no

question about your eminent qualifications."

Mr. Kennedy also testified that plaintiff's case was "incredibly complicated," because it involved federal statutes and regulations, which he said had been described by Missouri courts as an "impenetrable Serbonian bog," as well as unwritten or unpublished Missouri policies and procedures, and that plaintiff's case required an attorney who was experienced in state and federal Medicaid statutes, regulations and procedures and in appellate litigation.

Prof. Ammann testified that he reviewed the entire file in this case and characterized Mr. Kennedy's representation as "full and efficient." He continued:

A. It was excellent representation. I don't think—There's nobody else I know, including myself, who could have gotten the result he did, based on the complexity, and who would have stuck with the case from the administrative proceeding up to the Supreme Court and back to the Appellate Court and now back here. Many attorneys would have said I'm not—I'm not proceeding further. There are a lot of attorneys who say I will do the administrative hearing, but not go further. Mr. Kennedy stuck with the case the entire time.

Mr. Kennedy and Ms. Greider used a computerized program to keep their time records, Mr. Kennedy testified that his firm's invoices indicated whether he or Ms. Greider had performed the work. Mr. Kennedy testified that he and Ms. Greider were forced to spend more time on plaintiff's case than it ordinarily would have taken because defendant litigated every issue and the case went to the court of appeals twice and to the Missouri Supreme Court once. He also testified that he and Ms. Greider did not spend more time than was necessary on the case. They did not duplicate their billing, and they handled the case more efficiently and in less time than any other attorney could have. Mr. Kennedy testified that the time records kept on plaintiff's case were accurate.

Mr. Kennedy charged plaintiff $200.00 per hour, which had been his standard hourly rate for at least the past four years, Mr. Kennedy testified that his hourly rate was fairly low for specialists with comparable experience and that most lawyers would charge substantially more than his rate. Mr. White testified that Mr. Kennedy's $200.00 hourly rate was a "very fair" amount, and Prof. Ammann testified that Mr. Kennedy's rate was on the low end for a complicated case. Mr. White testified that he did not know any attorney in the metropolitan St. Louis area who would handle any case for $75.00 per hour or less. Prof. Ammann testified that the going rate for a new attorney practicing alone or at a small firm was from $140.00 to $180.00 per hour, and that any new attorney would have had to spend two or probably three times the number of hours that Mr. Kennedy had billed on plaintiff's case.

Counsel for defendant did not challenge Mr. Kennedy's hourly rate or time records. He had only one question about the amount of time Mr. Kennedy spent on the case; that was to ask Mr. Kennedy to explain his time entries when he challenged defendant's motion to file a late notice of appeal. Counsel for defendant characterized this challenge as an attempt "to win the case" on a procedural technicality.

In his case, defendant did not adduce any evidence challenging Mr. Kennedy's legal bill. In closing argument, defendant argued only that Mr. Kennedy should not be paid for the 12.9 hours spent "attempting to win the case on a technicality" in the court of appeals and the supreme court,

and that Mr. Kennedy's law partner, Ms. Greider, who billed 10.1 hours, did not testify to her qualifications. Thus, defendant only questioned 23 hours of the 226.60 hours Mr. Kennedy billed to plaintiff.

The trial court thereafter entered Findings of Fact, Conclusions of Law, and Judgment. The court's findings of fact relevant to the issues raised in this appeal are:

2. On September 16, 2002, a hearing was held on an appeal of the denial of an HCBS waiver slot to [plaintiff]. Plaintiff had previously been ruled eligible for the waiver slot. Although there was no formal entry by counsel for [defendant], the hearing proceeded to a conclusion after evidence and witness testimony was adduced, challenged and ruled upon. [DMH] was represented by Greg A. Perry, Assistant Attorney General. The Agency offered three witnesses. The Director of [DMS] issued a decision November 13, 2002 affirming the Agency's action.

\* \* \* \* \* \*

4. At the hearing on attorney's fees, counsel for the Defendant did not challenge the recognized expertise and experience of Plaintiff's counsel in the field of Medica[id] law.

5. [Guardian] related his unsuccessful efforts to obtain counsel to appeal the Agency decision. Those attorneys he approached did not feel competent to handle Plaintiff's appeal due to their unfamiliarity with the specialty of Medica[id] law.

6. Attorney Greg White testified that although he had a history of legal representation for the Hutchings' family, he did not feel competent to represent Plaintiff in this case.

7. Plaintiff's counsel offered testimony as to his hourly rate of $200.00 and stated that it was reasonable based on prevailing rates for attorneys and based on his vast experience in the Medica[id] law area.

Based on its findings, the trial court entered the following conclusions of law:

1. Pursuant to Section 536.085(1) RSMo., the Court finds as a matter of law that the hearing held on September 16, 2002 was "an agency proceeding in a contested case....in which the state is represented by counsel." Greg A. Perry, Assistant Attorney General, is noted as being present. There was nothing precluding the Defendant Agency from having counsel present. To allow the Agency to escape liability for attorney fees on that basis would be unfair.

2. The proceedings on September 16, 2002 were not "proceedings for determining the eligibility or entitlement of an individual to a monetary benefit or its equivalent". Section 536.085(1) RSMo. The Plaintiff was determined to be eligible for the HCBC waiver slot. The issue in the hearing and in subsequent proceedings has always been Defendant's policy or criteria used to exclude Plaintiff from a placement on the program.

3. Plaintiff and his guardian meet the monetary requirement for attorney fees. Section 536.088(2) RSMo.

4. Plaintiff was the prevailing party in the Circuit Court and on appeal. Section 536.085(3) RSMo.

5. This Court determines as a matter of law that "a special factor such as limited availability of qualified attorneys for the proceedings involved" did exist. Section 536.085(4) RSMo., thus removing the fees from the statutory $75.00 per hour.

6. The Court of Appeals ruled that the position of the Defendant in the underlying case was not substantially justified. At the January hearing, attorney for Defendant repeatedly tried to retry this issue to supplement the record. The Court finds these attempts misguided and inappropriate.

. 7. The Court finds no special circumstances to make an award of attorneys fees unjust. Section 536.087(2) RSMo.

The trial court entered judgment granting plaintiff's application for attorney's fees and expenses. The judgment recited: "Based on all the special factors discussed above, the Court awards Plaintiff the sum of $25,000.00, which the Court finds reasonable and said sum shall be paid from the State Legal Defense Fund."

## DISCUSSION

Defendant raises four points on appeal. He maintains that the trial court erred in making any award of attorney's fees because: 1) the trial court lacked jurisdiction to award attorney's fees in that the administrative hearing was not an "agency proceeding" as defined by section 536.085(1); 2) defendant was not given an opportunity to introduce evidence of substantial justification and the trial court unlawfully presumed that the action was not substantially justified; and 3) the decision to deny plaintiff a waiver slot was substantially justified. Finally, defendant asserts that the trial court erred in awarding attorney's fees in excess of the statutory $75.00 maximum hourly rate because no "special factor," as contemplated by section 536.085(4), justified a higher rate.

In his cross-appeal, plaintiff asserts that the . trial court abused its discretion by awarding a lesser amount of attorney's fees than requested because the court's written findings and conclusions did not support a conclusion that the lesser amount was reasonable. Plaintiff seeks a reversal of the amount of the award and remand to redetermine the amount of attorney's fees to be awarded.

*Standard of Review*

■ We may modify, reverse, or reverse and remand a trial court's determination of attorney's fees under section 536.087 if the award, or the calculation of the amount of the award, was arbitrary and capricious, was unreasonable, was unsupported by competent and substantial evidence, was made contrary to law, or was made in excess of the court's jurisdiction. Section 536.087.7; *Washington v. Jones*, 154 S.W.3d 346, 349 (Mo.App.2004). Our determination must be made solely on the record made before the agency or the trial court. Section 536.087.7; *Washington*, 154 S.W.3d at 349. We view the evidence in the light most favorable to the judgment. *Id.* We give *de novo* review to questions of law. *Id.*

■ · We do not address errors that first appear in the argument portion of a brief and are not encompassed in the point relied on, because they are not preserved for review. *City of Sullivan v. Truckstop Restaurants*, 142 S.W.3d 181, 193 (Mo. App.2004).

## DEFENDANT'S APPEAL

Section 536.087.2 allows a party who prevails in an action for judicial review of an agency proceeding to be awarded the reasonable fees and expenses incurred by that party in the review proceeding and in the agency proceeding "unless the court finds that the position of the state was substantially justified or that special circumstances make an award unjust." All of defendant's points challenge the trial court's power to award attorney's fees under section 536.087. These are legal questions that we review *de novo*.

## I. *Jurisdiction to Award Attorney's Fees*

█ In his first point, defendant contends that the trial court erred in awarding attorney's fees because the court did not have jurisdiction to award any attorney's fees in that the September 16, 2002 administrative hearing was not an "agency proceeding" in that 1) the proceeding involved a determination of the "eligibility or entitlement ... to a monetary benefit or its equivalent," and 2) defendant was not represented by counsel at the hearing.

Section 536.085(1) defines "agency proceeding" as "an adversary proceeding in a contested case ... in which the state is represented by counsel, but does not include proceedings for determining the eligibility or entitlement of an individual to a monetary benefit or its equivalent." "State" includes the State of Missouri, its officers and its agencies. Section 536.085(5).

### A. *Eligibility or Entitlement to Monetary Benefit or Equivalent*

Defendant first argues that the September 16, 2002 hearing was not an "agency proceeding" because it was a proceeding for determining "the eligibility or entitlement of an individual to a monetary benefit or its equivalent." We disagree.

On remand, the trial court held that this hearing was not a proceeding "for determining the eligibility or entitlement of an individual to a monetary benefit or its equivalent." The court based this conclusion on the evidence that plaintiff had already been determined eligible for a Medicaid HCBS Waiver slot and the issue in the hearing and in all subsequent proceedings had always been defendant's policy or criteria used to exclude plaintiff from placement in the program.

█ The May 17, 2002 MRDD Official Memorandum informed plaintiff that he was "eligible" for the waiver. Defendant argues that this eligibility determination did not mean plaintiff was *entitled* to any benefits. We disagree. "[O]nce a state opts to implement a waiver program and sets out eligibility requirements for that program, eligible individuals are entitled to those services and to the associated protections of the Medicaid Act." *Boulet,* 107 F.Supp.2d at 76. Plaintiff's eligibility and entitlement had already been determined before guardian requested an administrative hearing. Therefore, the September 16, 2002 hearing did not determine plaintiff's eligibility or entitlement to a monetary benefit or its equivalent.

### B. *Representation by Counsel*

█ Defendant also argues that the September 16, 2002 hearing was not an "agency proceeding" because defendant was not represented by counsel at the hearing. Section 536.085(1) requires that the "state" be represented by counsel at the hearing. Defendant cites no legal authority to support his position that the hearing was not an agency proceeding because DSS was not represented by counsel at that hearing, even though DMH, whose action guardian challenged in his hearing request, was represented. Accordingly, we deem this argument abandoned. *Beatty v. State Tax Com'n,* 912 S.W.2d 492, 498–99 (Mo. banc 1995).

In any event, this issue is moot because defendant subsequently appeared by counsel in the circuit court review proceeding, and he acknowledges that cases have held that this circumstance makes the process an "agency proceeding" as defined by the statute. *Washington,* 154 S.W.3d at 350; *State, Div. of Child Support Enforcement v. Grimes,* 998 S.W.2d 807, 810 (Mo.App. 1999).

Defendant's arguments, that the September 16, 2002 hearing was a proceeding

to determine plaintiff's eligibility or entitlement to a monetary benefit or its equivalent and that defendant was not represented by counsel, have no merit. Point one is denied.

## II. Exclusion of Evidence/Presumption of Substantial Justification

For his second point, defendant asserts:

The trial court erred in awarding attorneys fees because it did not allow the Director to present evidence that his position was substantially justified and because it did not make an independent determination whether the Director's position was substantially justified, in that it unlawfully created a presumption that the denial of a slot was not substantially justified.

This point contains two claims of error because it challenges two separate trial court actions, the exclusion of evidence and the failure to make an independent determination. These claims should have been set out in two separate points. *Cooper v. Bluff City Mobile Home Sales,* 78 S.W.3d 157, 167 (Mo.App.2002).

■ Further, the first claim of error is unreviewable because the point relied on does not set out the legal reasons for the claim of error or explain in summary fashion why the trial court erred in excluding it. *See* Rule 84.04(d); *Lemay v. Hardin,* 108 S.W.3d 705, 708–09 (Mo.App.2003). In addition, the argument portion of the brief under this point never identifies the excluded evidence, never explains why the evidence was admissible, and does not contain any legal authority to support the claim. For all of these reasons, this claim of error is unreviewable and we deem it abandoned. In re H.B., 165 S.W.3d 578, 582 (Mo.App.2005); *see Lemay,* 108 S.W.3d at 709.

The second claim of error also fails to comply with Rule 84.04(d) in that it does not state the legal reasons for the claim of reversible error and does not explain why, in the context of the case, any legal reasons support the claim of reversible error. *See Lemay,* 108 S.W.3d at 708–09. Defendant's argument in support of this claim appears to rest on his assumptions 1) that the trial court presumed, contrary to section 536.087.3, that the state's position was not substantially justified by virtue of the fact that the state lost in *Hutchings I*, and 2) that the trial court did not make sufficient findings on substantial justification. We disagree with the premises on which this argument is based.

The trial court's finding was based on this court's opinion in *Hutchings I*, which, as will be more fully set out in our discussion of point three, recited uncontested facts appearing in the record from which the trial court could have concluded defendant had no reasonable basis in law or fact for his position. Although the trial court could have phrased its finding more artfully, there is no indication that the trial court found, much less presumed, substantial justification merely on the basis that the state was the losing party in *Hutchings I*, a presumption that may not be made. *See* section 536.087.3; *McMahan v. Mo. Dept. of Social Services,* 980 S.W.2d 120, 124 (Mo.App.1998).

For all of the above reasons, point two is denied.

## III. Substantial Justification

■ For his third point, defendant maintains that the trial court erred in awarding attorney's fees because the decision to deny plaintiff a waiver slot was substantially justified in that a reasonable person could have agreed with defendant's position. Again, we disagree.

Section 536.087.2 provides that reasonable fees and expenses shall be awarded to the prevailing party unless the court finds that "the position of the state at the agency level was substantially justified" or that special circumstances would make an award unjust. Section 536.087.3 specifies that the decision on whether the state's position was substantially justified is to be determined on the basis of the record that was made in the agency proceeding or the civil action for which fees and other expenses are sought, and on the basis of the record of any hearing the court or the agency deems appropriate to determine whether an award of reasonable fees and expenses should be made, "provided that any such hearing shall be limited to consideration of matters which affected the agency's decision leading to the position at issue in the fee application." *See also Pulliam v. State,* 96 S.W.3d 904, 907 (Mo.App.2003). Thus, the position of the state must have been substantially justified at the time that the agency made its decision. *Dishman v. Joseph,* 14 S.W.3d 709, 716 (Mo.App.2000); *McMahan,* 980 S.W.2d at 125.

When it reviews the agency decision, the trial court must consider the question of substantial justification on the record made in the agency proceeding. *Dishman,* 14 S.W.3d at 718. The court cannot reconsider the underlying facts of the case and make a fee award on the basis of new findings. *Id.* Further, the trial court is not free to redecide fact or credibility issues and deny a fee on the basis of any new determinations. *Id.*

The state has the burden of establishing substantial justification for its position. *Greenbriar Hills Ctry. Club v. Dir. of Rev.,* 47 S.W.3d 346, 354 (Mo. banc 2001). To meet this burden, the state must show that it had "a reasonable basis in both fact and law for its position, and

that this basis was not merely marginally reasonable but clearly reasonable, although not necessarily correct." *Dishman,* 14 S.W.3d at 717. "Good faith or lack thereof will often be a very relevant and important consideration in making the substantial justification determination, but proof of a lack of good faith is not a mandatory element of recovery of fees." *Id.* There is no burden on the applicant to prove the state acted in bad faith. *Greenbriar,* 47 S.W.3d at 354.

In his argument under this point, defendant maintains that his position in denying the waiver slot to plaintiff was substantially justified because the state did not have sufficient funds to provide a waiver slot to plaintiff. In *Hutchings I,* we held that the only evidence that the state did not have funds to provide plaintiff a waiver slot was in the form of a conclusory remark by one witness that was not supported by any facts in the record. Accordingly, we held that there was no substantial evidence to support a finding that MRDD's refusal to grant the waiver was due to lack of state funding. 151 S.W.3d at 91. Further, even if there had been such evidence, it is well-established that inadequate state funding does not excuse a state's failure to comply with the reasonable promptness requirement contained in the Medicaid Act, 42 U.S.C. section 1396a(a)(8). *Doe v. Chiles,* 136 F.3d 709, 722 (11th Cir.1998); *Alabama Nursing Home Ass'n v. Harris,* 617 F.2d 388, 396 (5th Cir.1980); *Boulet,* 107 F.Supp.2d at 79; *Sobky v. Smoley,* 855 F.Supp. 1123, 1148 (E.D.Cal.1994). Point three is denied.

IV. *"Special Factor"*

In his final point, defendant asserts that the trial court erred in awarding attorney's fees in an amount greater than the maximum statutory hourly rate of $75.00 because no "special factor" existed to justify

such an award. Defendant argues that the factors the trial court listed in its written findings were plainly insufficient to support the greater amount.

■ The trial court's findings of fact on this issue were that defendant did not challenge Mr. Kennedy's recognized expertise and experience in Medicaid law, guardian had testified to his difficulty in obtaining competent counsel experienced in Medicaid law to appeal the agency decision, Mr. White testified that he was not competent to represent plaintiff in this case, and Mr. Kennedy had testified that his $200 hourly rate was reasonable based on both the prevailing rates for attorneys and his vast experience in Medicaid law. From these findings, the trial court concluded that a "special factor such as limited availability of qualified attorneys for the proceedings involved" existed, so the fees were not subject to the statutory maximum of $75.00 per hour.

Sections 536.087.1 and 536.087.2 allow for recovery of "reasonable fees and expenses." Section 536.085(4) defines that phrase as follows:

"Reasonable fees and expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test or project which is found by the court or agency to be necessary for the preparation of the party's case, and reasonable attorney or agent fees. The amount of fees awarded as reasonable fees and expenses shall be based upon prevailing market rates for the kind and quality of the services furnished, except that no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the state in the type of civil action or agency proceeding, and attorney fees shall not be awarded in excess of seventy-five dollars per hour unless the court

determines that a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee[.]

■ Section 536.085(4) expressly allows fee awards in excess of $75.00 per hour when the court determines that a "special factor, such as the limited availability of qualified attorneys" justifies a higher fee. *McMahan*, 980 S.W.2d at 127. The limited availability of qualified attorneys in the area who are willing to take a case at the $75.00 hourly rate is a "special factor" that can justify an enhancement above the statutory cap. *Id.* The party requesting an award of attorney's fees bears the burden of introducing competent and substantial evidence to support the claim that a special factor exists. *Washington*, 154 S.W.3d at 352. Not only must the trial court determine that a "special factor" exists that justifies a higher fee, but also the court "must address in its written findings and conclusions whether it deems that a 'special factor' exists which justifies a fee award ... in excess of $75 per hour, and if so, why." *McMahan*, 980 S.W.2d at 127; *see also* section 536.087.6.

In its conclusions of law, the trial court specifically determined that a special factor, the "limited availability of qualified attorneys for the proceedings involved," did exist, and the court explained this conclusion in its findings. There was uncontroverted evidence that Mr. Kennedy was the only available attorney in the metropolitan St. Louis area who could and would handle plaintiff's case. Further, there was evidence that no attorney in the area would handle any case for $75.00 per hour. The trial court did not err in concluding that a special factor existed, that permitted it to enhance the statutory fee. Point four is denied.

## PLAINTIFF'S CROSS-APPEAL

For his sole point on cross-appeal, plaintiff asserts that the trial court abused its discretion in awarding a lesser amount of attorney's fees than requested because the trial court's written findings of fact and conclusions of law did not support a reduction in the fee. In his argument under this point, plaintiff claims that the trial court's written findings weigh in favor of an award of the full amount of fees incurred and contends that "[t]he trial court made no findings of fact supporting a reduction in fee." In other words, plaintiff argues that the amount of the fee awarded was inconsistent with and not supported by the findings and conclusions that the trial court made. Plaintiff seeks reversal of the amount of the award and a remand for findings and a redetermination of the amount of attorney's fees.

■■■■ Section 536.087 provides for attorney's fee awards in order to require state agencies to carefully scrutinize proceedings and to increase the accountability of state agencies. *Wadley v. State Dept. of Social Services*, 895 S.W.2d 176, 179 (Mo. App.1995). Section 536.087 embodies a "broad public policy to ensure the legitimacy and fairness of government and the law so that contests between private citizens and the government are decided on the merits of the matter and not on the costs." *Id.*

■■■■ Once a trial court determines that a party is entitled to reasonable fees and expenses under section 536.087, the court must determine what is reasonable. Fees include amounts incurred representing the party before the administrative agency, the circuit court, and the appellate courts, and in obtaining and defending the fee award. *See McMahan*, 980 S.W.2d at 125–26. Section 536.085(4) requires that the amount of fees awarded as reasonable fees and expenses be based upon the "pre-vailing market rates for the kind and quality of the services furnished." Section 536.087.6 requires that the decision on a fee award be in writing and "include written findings and conclusions and the reason or basis therefor." *See McMahan*, 980 S.W.2d at 124.

The plain import of the above statutory language is that the decision either to award or not to award fees must be in writing, and must explain the reasons or basis for the decision. In this context, we interpret the phrase "findings and conclusions and the reason or basis therefor" to mean that the decision of the court or agency must, at a minimum, state in writing its findings regarding the amount (if any) of fees and expenses to which the applicant is entitled, its conclusions regarding whether the applicant was a "prevailing party" and whether the position of the State was "substantially justified," and a concise but clear explanation of the reasons for those findings and conclusions. The decision should also explain any other reasons or basis that the court or agency relied on in reaching its decision, or in resolving any specific contentions relative to the fee application that either party may have raised. *Id.*

■■ The factors relevant to a determination of a reasonable amount of attorney's fees under a statute that authorizes an award of reasonable fees include 1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; 2) the number of hours reasonably expended on the litigation; 3) the nature and character of the services rendered; 4) the degree of professional ability required; 5) the nature and importance of the subject matter; 6) the amount involved or the result obtained; and 7) the vigor of the opposition.

*Williams v. Finance Plaza, Inc.,* 78 S.W.3d 175, 184, 187 (Mo.App.2002); *Union Center Redev. Corp. v. Leslie,* 733 S.W.2d 6, 9 (Mo.App.1987).

As we have already set out in our discussion of the fourth point in defendant's appeal, the trial court made findings that supported its conclusion that a "special factor" existed that justified a fee award in excess of $75.00 per hour. The court concluded that plaintiff was a prevailing party and that the state's position was not substantially justified. However, the only findings the trial court made pertaining to the amount it awarded and found reasonable were that defendant did not challenge Mr. Kennedy's "recognized expertise and experience in the field of Medica[id] law" at the hearing, and that Mr. Kennedy testified that his $200 hourly rate was reasonable based on prevailing rates and his vast experience in Medicaid law.

 The trial court's written findings were insufficient under section 536.087.6 to support the court's award of $25,000 as a reasonable fee. The trial court's failure to make findings and conclusions, along with clear and concise explanations, supporting the amount of attorney's fees awarded requires this part of the judgment to be reversed and remanded. On remand, the court should consider all relevant factors, including those listed above, that it relied on in reaching its decision, and resolve all specific contentions the parties have raised relative to the fee application.

In this case, the determination of a reasonable fee requires a finding on whether the $200 hourly rate was reasonable in light of the nature and character of the services rendered, the complexity of the case, the specialization required, the rates customarily charged by Mr. Kennedy, and the rates charged by other attorneys for similar services. If the court does not find that Mr. Kennedy's $200 hourly rate was

reasonable, the court should make a finding of what hourly rate would be reasonable in accord with these factors. The court should also provide a concise and clear explanation for its findings and conclusions on this issue.

The determination of a reasonable fee also requires a finding on whether the number of hours billed was reasonable in light of the nature of the work required, the complexity of the case, the vigor of the opposition, and the result obtained. If the number of hours Mr. Kennedy billed was not reasonable, the court should find what number of hours would be reasonable in accord with these factors. The court should also provide a concise and clear explanation for its findings and conclusions on this issue.

 Because these issues may arise on remand, we address defendant's arguments at the hearing that the number of hours billed should be reduced by the time plaintiff spent challenging defendant's motion to file a late notice of appeal or by the time Ms. Greider spent on the case. The law does not support either of these reductions. When a notice of appeal is untimely filed, the court of appeals is without jurisdiction and must dismiss the appeal. *Budd v. Budd,* 157 S.W.3d 229, 230 (Mo. App.2004). In this case, defendant filed a motion to file a late notice of appeal. Plaintiff filed suggestions in opposition and this court denied defendant's motion. Defendant filed a motion to reconsider, plaintiff again filed suggestions in opposition, and we denied the motion. The Supreme Court subsequently entered an order allowing defendant to file a late notice of appeal. That the Supreme Court ultimately exercised its discretion to allow defendant to file a late notice of appeal does not make it unreasonable for plaintiff's attorney to have challenged defendant's appeal on this valid ground, and it is not a basis to

reduce the amount of plaintiff's attorney's fees. When "a plaintiff's claims are related and [he or] she has obtained excellent results overall, [his or] her counsel should recover a fully compensatory fee that should not be reduced simply because [he or] she had not prevailed on every litigated claim." *Williams,* 78 S.W.3d at 185. A defendant who litigates tenaciously cannot be heard to complain about the time that the plaintiff necessarily spent overcoming defendant's vigorous defense. *Id.* at 187.

▮ In addition, it was not necessary that Ms. Greider personally testify to her qualifications. The itemized invoice, which was before the court, showed the number of hours billed for her time, described the work she did, and set out her hourly rate. Her law partner, Mr. Kennedy, testified to the accuracy of the bill and to Ms. Greider's experience and expertise. Mr. Kennedy had personal knowledge of these matters and was thus competent to testify to them. *See Lamb v. Heiligers,* 532 S.W.2d 820, 824 (Mo.App.1975).

The trial court erred in not making findings supporting its conclusion that a substantially lesser fee than plaintiff requested was reasonable. The sole point on plaintiff's cross-appeal is granted.

### MOTION FOR ATTORNEY'S FEES ON APPEAL

Plaintiff filed a motion for attorney's fees on appeal. He is entitled to reasonable fees for services rendered on appeal. *See Williams,* 78 S.W.3d at 188; *McMahan,* 980 S.W.2d at 126. Because the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested, on remand the trial court should conduct a hearing to determine the reasonableness of the attorney's fees and expenses requested on appeal. *Rosehill Gardens, Inc. v. Luttrell,* 67 S.W.3d 641, 643 (Mo.App.2002). The trial court may hear or receive additional evidence on the additional fee requested for this appeal.

### CONCLUSION

We reverse the amount of the attorney's fee awarded and remand. On remand, the court is directed to:

1. Determine a reasonable attorney's fee for the services rendered until December 7, 2004, from the record made in the prior hearing, make findings as directed by this opinion, and award a reasonable fee in accord with those findings.

2. Conduct a hearing and determine the amount of reasonable attorney's fees incurred on appeal, make findings explaining the rationale for its award, and add this amount to its award.

In sum, the amount of the judgment is reversed and remanded with directions. In all other respects, the judgment is affirmed.

LAWRENCE E. MOONEY, J. and BOOKER T. SHAW, J., concur.