Sharon Mary **CONRAD–NEUSTADTER,** Respondent,

v.

Roger Marc **NEUSTADTER, Appellant.**

No. WD 72040.

Missouri Court of Appeals, Western District.

May 3, 2011.

Craig D. Ritchie, Jennifer L. Soper and Tiffany D. Tant–Shafer, St. Joseph, MO, for appellant.

Thomas R. Summers, St. Joseph, MO, for respondent.

Before Division One: GARY D. WITT, Presiding Judge, JAMES E. WELSH, Judge and ALOK AHUJA, Judge.

GARY D. WITT, Judge.

Appellant, Roger Marc Neustadter, appeals the circuit court's judgment reducing but not terminating his maintenance payments to the Respondent, Sharon Mary Conrad–Neustadter. We affirm.

## Factual Background

The marriage of Appellant, Roger Marc Neustadter ("Roger"), and Respondent, Sharon Mary Conrad–Neustadter ("Sharon") was dissolved on June 5, 2006. Pursuant to a Separation and Property Settlement Agreement incorporated into the trial court's judgment, Roger was to provide modifiable maintenance for Sharon until the death of either party, remarriage by Sharon, or Sharon's cohabitation with another man. The maintenance obligation is set forth as follows:

First, Roger was to provide a lump sum payment of $4,000 on July 1, 2006;

Second, Roger was to pay Sharon $1,600 per month, beginning August 1, 2006 and continuing through July of 2010;

Third, beginning August 1, 2010, Roger was to pay Sharon $1,000 per month until further order of the Court.

Roger also agreed to maintain health insurance through his employer for Sharon for the three years following the dissolution of marriage.

On July 27, 2009, Sharon filed a Motion for Contempt in which she claimed Roger had failed to comply with the judgment by refusing to make certain maintenance payments. Sharon also alleged Roger failed to maintain medical insurance as required. Sharon claimed damages of $5,923.84 for unpaid maintenance and $9,994.72 for insurance costs. She also requested attorney's fees. Roger filed an Answer and Counter–Motion to Modify Judgment Entry for Dissolution of Marriage as to Maintenance, requesting the court terminate or decrease the maintenance award.

Following a hearing on November 19, 2009, the court entered a Judgment Entry Modifying Judgment Entry for Dissolution

of Marriage Concerning Maintenance and Entering Judgment for Contempt. The court found that Roger had failed to pay Sharon's health insurance premiums for the three years following the original judgment and found that he owed Sharon $15,494.92. The Court also found that there had been a substantial and continuing change in circumstances which made the then current maintenance schedule unreasonable. The specific basis of changed circumstances was that Sharon began receiving Social Security payments each month at the age of sixty-five, when the agreement between the parties presumed that Sharon would not begin receiving social security benefits until age sixty-six. The Court determined that a reasonable maintenance payment was $1,000.00 per month beginning on September 1, 2009 (the reduction occurring eleven months earlier than anticipated in the original judgment of dissolution, but coinciding with Sharon's receipt of social security benefits). Based on this retroactive amendment to the maintenance obligation, the court found that Roger had overpaid maintenance by the sum of $5,500. After offsetting this overpayment by the amount owed for the health insurance obligation, the court found Roger owed Sharon a net amount of $9,994.72.

Roger now appeals. Further factual details will be provided in the analysis section below as required.

## Standard of Review

◼ "The trial court's modification of a maintenance award must be affirmed unless there is no substantial evidence to support it; it is against the weight of the evidence; or it erroneously declares or applies the law." *Brooks v. Brooks,* 957

S.W.2d 783, 786 (Mo.App. W.D.1997) (citing *Lamont v. Lamont,* 922 S.W.2d 81, 83 (Mo.App. W.D.1996); *Theilen v. Theilen,* 911 S.W.2d 317, 318 (Mo.App. W.D.1995)).

The trial court has broad discretion in awarding maintenance, and its decision will not be overturned absent an abuse of discretion. To determine whether the trial court abused its discretion, this court reviews the evidence in a light favorable to the decree, disregarding any evidence to the contrary and deferring to the trial court's judgment even if the evidence could support a different conclusion.

*Hammer v. Hammer,* 139 S.W.3d 239, 240 (Mo.App. W.D.2004) (internal citations omitted) (citing *Stangeland v. Stangeland,* 33 S.W.3d 696, 700 (Mo.App. W.D.2000)).

## Analysis

◼ In Point One, Roger argues the trial court erred in failing to terminate the award of maintenance because the court's judgment is not supported by substantial evidence and is against the weight of the evidence in that the court failed to consider Sharon's significant income-producing property and improperly found that Sharon was incapable of supporting herself through appropriate employment.

Section 452.370 [1] governs Roger's motion to modify the court's prior award of maintenance. That section provides "the provisions of any judgment respecting maintenance or support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." Section 452.370.1. "[T]he court, in determining whether or not a substantial change in circumstances has occurred, shall consider

---

1. All statutory citations are to RSMo 2000 as updated through the 2010 Cumulative Supplement, unless otherwise indicated.

all financial resources of both parties...." *Id.* Here, the trial court determined that the social security benefits Sharon now receives constitutes a substantial and continuing change in circumstances, which justified a modification of maintenance. This finding is not disputed.

To be entitled to maintenance, the trial court must first determine that the spouse seeking maintenance

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Section 452.335.1. Next, "[i]n determining the amount to award for maintenance in a modification proceeding under § 452.370, the trial court may, but is not required to, consider the factors found in § 452.335, just as if the trial court was determining an original maintenance award."[2] *Brooks*, 957 S.W.2d. at 786 (citing *Smith v. Smith*, 632 S.W.2d 91 (Mo.App. E.D.1982)).

First, Roger argues the trial court erred in finding that Sharon could not provide for herself through appropriate employ-ment. Although this fact was not explicitly set forth in the judgment, we will assume the trial court found such as it is necessary in order for Sharon to be entitled to maintenance per section 452.335.1. Sharon testified at trial that she stopped working in 1998 or 1999 because she was unable to do so physically due to a degenerative disk disease. She testified that she did not seek further employment because she could not physically work and "wanted to have the quality of life that [she] hadn't had for a long time." She testified that she must be extremely careful with what she does in order to prevent back pain. Although she can do basic household chores, she is very careful and limited in what physical activities she can perform. Sharon is sixty-six years old.

Roger argues that Sharon "provided no credible testimony that she could not work, only that she chose not to" suggesting that it was her burden on his motion to modify, to again prove she was entitled to maintenance. The statute governing the modification of a maintenance award is silent as to what exactly the burden of proof is upon the person seeking modification of the maintenance award after there has been a sufficient showing of a substantial and continuing change of circumstances to support a modification. *See* section 452.370. How-

---

2. The factors in section 452.335.2 include the following:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

ever, that same statute also governs when a child support order may be modified and provides explicitly that after a showing of a substantial and continuing change in circumstances to warrant modification, "the child support shall be determined in conformity with criteria set forth in section 452.340 and applicable supreme court rules." Section 452.370.2. There is no such specificity in the statute in regard to a modification of the appropriate amount of maintenance. This court has followed the principle that a re-determination of the appropriate amount of maintenance by the trial court pursuant to a motion to modify may include the factors set out when the original determination of maintenance was decided, but such is not required. *Smith v. Smith*, 632 S.W.2d 91 (Mo.App. E.D. 1982). Accordingly, the trial court has more unfettered discretion as to a determination of maintenance upon a motion to modify than in the initial maintenance determination. The burden of proof first falls upon the movant seeking a modification of maintenance to show a substantial and continuing change of circumstances to justify modification of the maintenance award. *McKown v. McKown*, 280 S.W.3d 169, 172 (Mo.App. W.D.2009). Unless this threshold is met, the trial court goes no further.

Once that threshold is met, the burden remains on the moving party on all issues regarding the termination of or the calculation of the appropriate amount of maintenance.[3] This rule recognizes both the discretion accorded the trial court to determine maintenance in the first instance and also the more unfettered discretion given the trial court upon the modification of maintenance.[4] Further, this rule furthers the policy of limiting the modification of maintenance awards to "discourage recurrent and insubstantial motions for modification" *Id.* (citing *Peine v. Peine*, 200 S.W.3d 567, 579 (Mo.App. W.D.2006)), and further supports the general rule that a party seeking relief bears the burden of establishing that they are entitled to the relief sought. *See, e.g., Cupples Hesse Corp. v. State Tax Comm'n*, 329 S.W.2d 696, 702 (Mo.1959) ("the burden of proof on the facts and inferences would still rest on petitioner, for it is the moving party seeking affirmative relief"); *Coleman v. Jackson Cnty.*, 349 Mo. 255, 160 S.W.2d 691, 693 (1942) (the party upon whom the law places the final burden of proof is the proponent). Accordingly, Roger's argument that Sharon "provided no credible testimony that she could not work, only that she chose not to" ignores the fact that Roger carries the burden of proof on this issue and all other issues regarding modification or termination of maintenance, in that he is the party seeking to have his maintenance obligation modified or terminated.

Roger's argument also ignores the fact that Roger agreed (through his settlement), that at the time of the original dissolution Sharon was unable to support herself and was entitled to maintenance, and there was no evidence before the court that her ability to obtain employment had improved between the time of the dissolution and the modification thereof. In addi-

---

3. Of course, if the trial court is presented with cross-motions to modify a maintenance award, each party assumes his/her own burden to show that he/she is entitled to the relief that each seeks.

4. To the extent prior decisions by this Court suggest that the burden is always on the spouse seeking maintenance, even when it is the obligor spouse who petitioned the court for modification or termination of maintenance, those cases should not be followed. *See, e.g., Brooks v. Brooks*, 957 S.W.2d 783, 788 (Mo.App. W.D.1997).

tion, Sharon specifically testified, in regards to working, that she "physically couldn't do it." The trial court is in the best position to judge witness credibility and this court will, therefore, defer to the trial court in such matters. *See Ansley v. Ansley*, 15 S.W.3d 28, 32 (Mo.App. W.D. 2000) (citing *Ellis v. Ellis*, 970 S.W.2d 416, 417 (Mo.App. W.D.1998)).

Roger next argues the trial court failed to consider significant income-producing property in its provision of maintenance to Sharon. The evidence at trial showed that Sharon has a mutual fund that she received as part of the property settlement in the dissolution. This fund has undulated in value substantially over the past three years. At the end of 2007, the fund was valued at $368,776.78. In 2008, the fund dipped significantly and was valued at $178,432.18. By the time of trial, the fund was valued at $212,811.32. Sharon receives profits from interest and/or dividends on this fund. The income has fluctuated between approximately $33,000 in 2007 and $14,000 in 2008. Historically she has not taken the income earned out of the fund but has reinvested it therein.

Roger is correct that investment income is to be considered in determining whether the spouse has sufficient income to provide for his or her reasonable needs. *Cohen v. Cohen*, 73 S.W.3d 39, 47 (Mo.App. W.D. 2002) (citing *Allen v. Allen*, 927 S.W.2d 881, 888 (Mo.App. W.D.1996)). The Missouri Supreme Court in *Hill v. Hill*, 53 S.W.3d 114, 116 (Mo. banc 2001), set out a test "to harmonize the competing principles that while a party is not required to deplete his or her marital assets before being entitled to maintenance, maintenance should not allow a party to build an estate or accumulate wealth." *Cohen*, 73 S.W.3d at 49. That test is as follows:

> In sum, when calculating maintenance, a trial court must consider the income from retirement and IRA accounts to be apportioned as marital property. The trial court determines the amount of income-if any-imputed from these accounts based on the facts and circumstances of each case-including the cost to convert the account into cash, the age of the parties, their intent as to investment/consumption/retirement, the relative division of marital property and marital debts, and any equitable adjustment for reasonably certain taxes and penalties.

*Hill*, 53 S.W.3d at 116.

In his argument, Roger ignores the fact that this fund was awarded to Sharon as part of the dissolution and that at the time of the dissolution, he agreed, through his settlement, that the income from this fund would not be sufficient to meet Sharon's reasonable needs. Roger also ignores the fact that he had the burden of proof on these issues because he is the party requesting that the maintenance obligation be modified, as discussed *supra*. We assume that the trial court took into account Sharon's investment property in making its decision that Sharon was entitled to $1,000 per month in periodic spousal maintenance, as Roger never made a request for specific findings of fact and conclusions of law and the Court provided none. *See* Rule 73.01(c); *In re Marriage of Murphy*, 71 S.W.3d 202, 205–06 (Mo.App. S.D.2002) (citing *Stangeland v. Stangeland*, 33 S.W.3d 696, 701 (Mo.App. W.D.2000)) ("When, as here, neither party requested findings of fact and conclusions of law pursuant to Rule 73.01(c), fact issues are deemed to have been resolved by the trial court in accordance with its award of maintenance.")

Accordingly, we must review the court's award of maintenance in light of all of the facts to see whether the result reached was an abuse of the trial court's discretion.

*See Hill*, 53 S.W.3d at 116 ("This [test] is but an application of the concept that trial courts have broad discretion in determining the amount of maintenance and appellate courts do not interfere, absent an abuse of discretion.") Under the facts of this case, we cannot say that the trial court has abused its broad discretion in the amount of maintenance awarded to Sharon.

Roger argues that Sharon's social security benefits and her income from her investment property should suffice to meet her reasonable needs. As the evidence showed, Sharon's investment property is subject to the volatility of the stock market. Between the end of 2007 and the end of 2008, the fund's principal value plummeted by more than fifty percent. Although it has regained some of those losses, there was no evidence presented as to the likely future income from the investment property and a spouse is not required to deplete her share of the marital property before she is entitled to maintenance. *See Sharrai v. Sharrai*, 322 S.W.3d 641, 645 (Mo.App. W.D.2010). Assuming the trial court adopted Sharon's proposed reasonable monthly needs,[5] Sharon's social security income, her interest income from her bank account (separate and apart from her mutual funds), and the award of maintenance by the trial court leaves an approximate gap of $500–$600 between Sharon's income and her claimed reasonable monthly needs. It is likely and reasonable for the trial court to have determined that this gap was capable of being filled by the profits Sharon makes from her mutual funds. Given Sharon's age, the settlement agreement entered into by both parties at the time of the

dissolution (with full knowledge of Sharon's physical limitations, lack of work history, and the amount of the investment property awarded to her per the property settlement), the drastic fluctuation in value of her mutual fund, and the state of the economy, we cannot say it was an abuse of the trial court's broad discretion to determine that an award of $1,000 per month of maintenance was necessary to meet Sharon's reasonable needs. In fact, it appears the trial court was attempting to comply with the parties' intentions in reaching the settlement of the original dissolution action in its judgment of modification. The parties in the dissolution agreed that when Sharon turned sixty-six years old (the point at which the parties believed she would begin receiving social security benefits) that her maintenance would be reduced to $1,000.00 per month. Sharon elected to receive her social security benefits eleven months earlier than was contemplated by the parties when they reached that settlement. The trial court reduced the maintenance accordingly to comply with the parties' settlement and this result is supported by the evidence.

Point One is denied.

In Point Two, Roger argues the trial court erred in awarding Sharon $1,000 per month in periodic spousal maintenance because the trial court erroneously applied the law in that the trial court failed to determine whether wife could now meet her reasonable needs.

First, Roger complains that the trial court failed to make explicit findings with respect to Sharon's ability to meet her own reasonable needs through property or employment. As discussed above, Roger never made a request for specific findings of

---

5. The trial court of course is free to believe or disbelieve Sharon's evidence as to her monthly reasonable needs. *See Simpson v. Simpson*, 295 S.W.3d 199, 204 (Mo.App. W.D.2009). We do not know whether the trial court thought those needs were higher or lower than Sharon's claimed reasonable needs.

fact and conclusions of law and the Court provided none. *See* Rule 73.01(c); *In re Marriage of Murphy,* 71 S.W.3d 202, 205–06 (Mo.App. S.D.2002) (citing *Stangeland,* 33 S.W.3d at 701) ("When, as here, neither party requested findings of fact and conclusions of law pursuant to Rule 73.01(c), fact issues are deemed to have been resolved by the trial court in accordance with its award of maintenance."). Therefore, we must assume that the trial court made the proper considerations in its judgment.

In his argument, Roger proceeds beyond his Point Relied On and argues essentially that if the trial court found Sharon was unable to meet her own reasonable needs, such a determination was unreasonable. Rule 84.04(e) limits the argument portion of a brief to those claims of error that appear in a point relied on. *See Hutchings ex rel. Hutchings v. Roling,* 193 S.W.3d 334, 346 (Mo.App.2006). As a result, our review is likewise limited to those errors. *Hutchings,* 193 S.W.3d at 346. We do not consider grounds for reversal that appear solely in the argument portion of the brief. *Id.*; *Russ v. Russ,* 39 S.W.3d 895, 899 n. 5 (Mo.App. 2001). *8000 Maryland, LLC v. Huntleigh Fin. Services Inc.,* 292 S.W.3d 439, 445 (Mo. App. E.D.2009).

*Ex gratia,* we fail to see how Roger's additional argument in Point Two is distinguished in any way from his Point One on Appeal. Both Points address the same issue: whether the trial court's determination that Sharon was entitled to maintenance and the amount thereof was an abuse of the trial court's discretion. As far as the reasonableness of the award of $1,000 per month in maintenance, this argument is addressed in Roger's Point Three.

For the same reasons set forth under Point One, Point Two is denied.

In Point Three, Roger argues the trial court erred in awarding Sharon $1,000 per month periodic spousal maintenance because the court's order is not supported by substantial evidence and is against the weight of the evidence in that the trial court failed to determine what would be a reasonable award of maintenance under the circumstances.

Roger's Point Three is puzzling. The trial court in its Judgment modifying maintenance determined that Sharon's receipt each month of a social security payment was a change in circumstances and that "because of this a *reasonable* maintenance payment from [Roger] to [Sharon] is One Thousand Dollars ($1,000) per month ..." (emphasis added). The trial court reduced the monthly maintenance payment by $600. It is clear that the trial court did determine what it considered a reasonable award of maintenance under the facts of the case.

Sharon testified and produced evidence of monthly expenses in the amount of $2,247. There was no indication in the judgment that the trial court found this amount to be unjustified or unreasonable. Roger's main contention with this figure was Sharon's claim of $400 per month for income taxes whereas her federal tax returns did not reflect such a figure per month. However, the record reflected that Sharon and her attorney developed that number by estimating the combined amount of federal taxes and state taxes. The trial court was free to believe or disbelieve this evidence even if uncontroverted. *Simpson v. Simpson,* 295 S.W.3d 199, 204 (Mo.App. W.D.2009).

As previously discussed, the trial court's determination that Sharon could not support herself through reasonable employment is supported by the record. Sharon testified she has a monthly income of $684

from Social Security and $16 from interest on her regular bank accounts. This is a total income of $700. The trial court's maintenance award of $1,000 added to her claimed income brings her available monthly income to $1,700 per month. This leaves a $547 gap between Sharon's evidence as to her income and her evidence of her reasonable expenses, without consideration of the mutual fund income. It is a logical inference to conclude that the trial court took into account Sharon's investment income and concluded that, given the current state of the economy, the low interest rates available for her investments, and the principle that a spouse should not have to deplete her award of marital property before being entitled to maintenance, that finding $500–$600 of income per month from her mutual funds was reasonable. While we do not know, because the trial court did not set forth its findings in its judgment, we set forth the facts above as one way the trial court could have reached its decision based on the evidence before it. Considering the host of factors present in the *Hill* test and the broad discretion given to trial courts in determining the amount of maintenance, we cannot say it was an abuse of the trial court's discretion to award Sharon $1,000 per month periodic spousal maintenance.

### Conclusion

For the reasons stated herein, the judgment of the trial court modifying the amount of maintenance to be paid by Roger is affirmed.

All concur.